## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-DP-01324-SCT

*DANNY PORTER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/15/96 |
| TRIAL JUDGE: | HON. MICHAEL RAY EUBANKS |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM L. DUCKER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LESLIE S. LEE |
| DISTRICT ATTORNEY: | RICHARD DOUGLASS |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - DIRECT APPEAL |
| DISPOSITION: | REVERSED AND REMANDED - 1/14/1999 |
| MOTION FOR REHEARING FILED: | 1/28/99 |
| MANDATE ISSUED: | 4/8/99 |

**EN BANC.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

### I. <u>INTRODUCTION</u>

¶1. This case arises from the October 30, 1993, murders of Bennie Brown, Sr., and Natasha Cole. It is alleged that Danny Porter (a.k.a. Danny Soul) and his roommate, Carlos Stewart, were hired by Herman Saunders (a.k.a. Robert "Tricky Mickey" Marsh) to kill Brown. It is further alleged, that, immediately after Brown's murder, Stewart returned to the scene alone and killed Cole, because she had recognized him. Porter was acquitted of Cole's murder, and this appeal involves only Count II of the indictment, the capital murder of Brown.

¶2. This Court finds that Porter's Sixth Amendment right to counsel was violated by a police-initiated interrogation, which resulted in Porter's confession, and which occurred two days after Porter asserted his right to counsel at an initial appearance. For this reason, the confession, made without the benefit of counsel, should have been suppressed. Therefore, this case is reversed and remanded to the trial court for

proceedings consistent with this opinion.

¶3. In addition, two other issues are addressed to provide guidance on remand: (1) the granting of a sentencing instruction on the statutory aggravator "that the defendant knowingly created a great risk to many persons", and, (2) the communications from the Attorney General's Office made during the sentencing phase of the trial.

¶4. This Court's consideration of the instruction on the aggravating circumstance of knowingly creating a risk to many persons is procedurally barred, because no contemporaneous objection was raised. Nonetheless, should similar evidence be introduced on remand, the instruction should not be given. That is, the evidence presented was insufficient to support such an instruction.

¶5. Furthermore, the input of the Attorney General's Office during the sentencing phase of this trial warrants a discussion on the propriety of such communications. The exact circumstances of the communication from the Attorney General's Office are unclear from the record. This Court recognizes that the Attorney General's Office is an important resource for prosecutors throughout this State. However, if any party is allowed to make arguments before a trial judge on behalf of the prosecution, the arguments must be made in the presence and hearing of defense counsel. Moreover, defense counsel must be given an opportunity to respond. The proscription against *ex parte* communications is a fundamental tenet of our judicial system. *Ex parte* communications from the Attorney General's Office, or any other source, are unacceptable, and are to be avoided.

¶6. Thus, this case is reversed and remanded for proceedings consistent with this opinion. The other issues raised by Porter are procedurally barred, without merit, and/or moot, and will not be addressed.

## II. <u>STATEMENT OF THE CASE</u>

¶7. On February 25, 1994, Danny Porter was indicted as an habitual offender for Count I, conspiracy to commit capital murder. However, this charge was later dismissed. Porter was also indicted as an habitual offender for Count II, the capital murder of Bennie Brown, Sr., and, Count III, the capital murder of Natasha D. Cole, under Miss. Code Ann. § 97-3-19 (2) (d), which defines murder for hire as capital murder.

¶8. On August 14, 1996, the jury convicted Porter of the capital murder of Bennie Brown, Sr., and acquitted Porter of the capital murder of Natasha Cole. The sentencing phase of the trial began, and, on August 15, 1996, the jury rendered its verdict -- that Porter should suffer death for the capital murder of Brown.

¶9. On November 19, 1996, the trial judge denied Porter's motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. Porter appeals, *in forma pauperis*, and raises the following issues for consideration by this Court:

### PRE-TRIAL ISSUES

**A. Whether the trial court erred in overruling the appellant's motion to quash and allowing the State to make a substantive amendment to the indictment?**

**B. Whether the trial court erred in overruling the appellant's motion to suppress the statement**

**taken by Lieutenant Sammy Pickens?**

**C. Whether the trial court erred in overruling the appellant's motion for appointment of an independent psychologist?**

**D. Whether the trial court erred in overruling the appellant's motion to quash the jury panel after the court allowed open discussion between the State's attorney and potential jurors concerning their feelings on the death penalty?**

## GUILT PHASE ISSUES

**E. Whether the trial court erred in admitting the videotape from the security camera installed in Junior Food mart, Exhibit #14?**

**F. Whether the prosecutor engaged in misconduct during closing arguments?**

## SENTENCING PHASE ISSUES

**G. Whether the trial court erred in admitting the criminal record of Herman Saunders into evidence?**

**H. Whether the trial court erred in allowing Dr. Chris Lott's rebuttal testimony?**

**I. Whether the trial court committed reversible error by incorrectly explaining to the appellant his right of elocution?**

**J. Whether the trial court erred in submitting to the jury the aggravating circumstance instruction that the appellant knowingly created a great risk to many persons?**

**K. Whether the trial court erred in refusing appellant's proposed Instruction D-3?**

**L. Whether the trial court erred in refusing appellant's proposed Instruction D-8?**

**M. Whether the trial court erred in refusing appellant's proposed Instruction D-11?**

**N. Whether the trial court erred in refusing appellant's proposed Instruction D-12?**

**O. Whether the trial court erred in refusing appellant's proposed Instruction D-13?**

**P. Whether the prosecution in this case engaged in misconduct that requires reversal?**

**Q. Whether the trial court erred in refusing to investigate alleged jury improprieties and in relying on the Attorney General's office to determine procedure?**

**R. Whether the trial court erred in failing to declare the death penalty statute unconstitutional and disproportionately applied?**

¶**10.** As stated earlier, Issue B is dispositive of this case, and only Issues B, J, and Q will be addressed.

### III. <u>STATEMENT OF THE FACTS</u>

¶11. The following facts are alleged in this case. Danny Porter and Carlos Stewart went to Brown's home on the morning of October 30, 1993. Stewart rang the doorbell, and Porter hid beside the door. One of Stewart's schoolmates, Natasha Cole, answered the door, and Stewart asked for Brown. When Brown came to the door, Porter shot him in the jaw, which caused Brown to eventually drown in his own blood. Stewart and Porter ran to their vehicle. Stewart returned to the house with the gun, and killed Cole, because she had recognized him. Saunders later paid Stewart and Porter $6,000 for killing Brown. Two weeks after the murders, Stewart and Porter were apprehended in Atlanta.

## IV. LEGAL ANALYSIS

¶12. This Court's well established standard for reviewing an appeal from a capital murder conviction and a death sentence is one of "heightened scrutiny", under which all *bona fide* doubts are resolved in favor of the accused. **Balfour v. State**, 598 So.2d 731, 739 (Miss.1992) (quoting **Williamson v. State**, 512 So.2d 868, 872 (Miss.1987)). This Court recognizes that "what may be harmless error in a case with less at stake becomes reversible error when the penalty is death." **Id.**

### Whether the trial court erred in overruling the appellant's motion to suppress the statement taken by Lieutenant Sammy Pickens?

¶13. Porter claims that he invoked his right to counsel at a November 16, 1993, initial appearance. As a result, Porter argues that his November 18, 1993, police-initiated statement to Lieutenant Sammy Pickens, made without counsel, should have been suppressed. Porter raises this argument for the first time on appeal. However, under the plain error doctrine, and, on the record as presented on appeal, this Court must reverse -- despite the fact that the trial court did not have the benefit of reviewing this precise issue.

¶14. The record reflects that Porter gave three statements to the police. The first two statements were made November 13 and 15, 1993, and were given to the Hattiesburg police officers who retrieved Porter and Stewart from the Atlanta authorities. Porter was extremely frightened in the Fulton County Jail, and was anxious to be returned to Mississippi. In both statements, Porter admitted that he knew of Saunders' plan to have someone killed, and that he recommended Stewart for the job. However, Porter denied actually participating in the murder.

¶15. After being returned to Mississippi, Porter gave a third statement on November 18, 1993, to Lieutenant Sammy Pickens of the Mississippi Highway Patrol. In that statement, Porter confessed to shooting Brown. Prior to trial, Porter moved for the suppression of that confession.

¶16. A suppression hearing was held, and Criminal Investigator Sammy Pickens, a veteran member of the Mississippi Highway Patrol, testified that the Hattiesburg Police Department asked him to interview Porter. Stewart had already confessed. The Hattiesburg officers wanted a fresh perspective from an experienced officer, because they thought that Porter was lying. Pickens testified as to the circumstances of the November 18, 1993, interview, which resulted in Porter's confession. Pickens believed that Porter made the statement freely and voluntarily.

¶17. After Pickens' testimony at the pre-trial hearing, defense counsel argued that the initial appearance was inappropriately delayed until November 19, 1993, or the day after Porter's confession. The trial judge found that, given the fact that Porter had to be returned to Mississippi from Atlanta on November 15, 1993, an initial appearance on November 19, 1993, would not have been an untoward delay.

¶18. The November 18, 1993, confession was subsequently introduced at trial, during the testimony of Officer Pickens. Pickens' testimony regarding the circumstances surrounding the statement was similar to that given during the suppression hearing. At the hearing on his motion for a new trial, Porter only contested the voluntariness of the statement given to Officer Pickens. The trial judge overruled that argument.

¶19. On appeal, Porter contends, for the first time, that this statement was taken in violation of his Sixth Amendment right to counsel. That is, Porter contends that he made his initial appearance and requested an attorney on November 16, 1993, and that an attorney was not appointed for him until December 1, 1993. Thus, Porter argues that the November 18, 1993, statement to Pickens was made after the right to counsel had attached and been asserted.

¶20. However, the factual assertions made before the trial judge at the suppression hearing were completely different. At that hearing, defense counsel argued that Porter's initial appearance had been postponed until after Officer Pickens was able to elicit the November 18, 1993, confession.

¶21. After the State filed its brief (in which it correctly argued that there was no evidence in the record, regarding the initial appearance), Porter moved the trial court to supplement the record. On April 29, 1998, the trial judge granted Porter's motion, and supplemented the record with the initial appearance form and the accompanying waiver of rights form. The documents are signed by Porter and the Justice Court Judge, and indicate that Porter made his initial appearance on November 16, 1993, and invoked his right to counsel.[(1)]

¶22. Thus, the question is -- given that Porter requested an attorney at his initial appearance on November 16, 1998 -- whether the November 18, 1993, statement to Officer Pickens was taken in violation of Porter's Sixth Amendment right to counsel. Granted, this is not the question that was presented to the trial judge. However, "this Court may notice 'plain error' affecting substantial rights." *Nixon v. State*, 533 So. 2d 1078, 1087 (Miss. 1987). "Moreover, the Court has also proclaimed, '[w]e have in death penalty cases the prerogative of relaxing our . . . plain error rules when the interests of justice so require.'" *Foster v. State*, 639 So. 2d 1263, 1295 (Miss. 1994) (quoting *Williams v. State*, 445 So.2d 798 (Miss.1984)).

¶23. On the record before us, and, under the established precedent, this Court finds that the statement to Officer Pickens was taken in violation of Porter's Sixth Amendment right to counsel, and should not have been admitted.

> Under both the United States and the Mississippi constitutions, an accused is entitled to be assisted by counsel during criminal proceedings instituted against him. "These rights are identical and differ only as to the time when each attaches."

> The sixth amendment right to counsel attaches once the state begins criminal proceedings by any means. At a pretrial proceeding, however, the law requires presence of counsel only if the proceeding constitutes a critical stage. A critical stage arises at any confrontation in which the results might affect the course of the later trial and in which the presence of counsel might avert prejudice at trial.

> Under Mississippi law, the right to counsel attaches earlier than does the sixth amendment right. This right attaches "once the proceedings against the defendant reach the accusatory stage." The "accusatory stage" is defined by Mississippi law to occur when a warrant is issued or, "by binding over or recognizing the offender to compel his appearance to answer the offense, as well as by

indictment or affidavit." This right to counsel "attaches at the point in time when 'the initial appearance under Rule 1.04 ... ought to have been held....' " However, the defendant must be able to show some adverse effect or prejudice to his ability to conduct his defense before denial of this right to counsel constitutes reversible error.

*Ormond v. State*, 599 So. 2d 951, 956 (Miss. 1992) (citations omitted).

¶24. Thus, Porter's Sixth Amendment right to counsel attached at the initial appearance. Moreover, Porter invoked this right when he indicated that he wanted "to talk to a lawyer before or during the time [he was] questioned."[(2)] "'Once the right to counsel has attached and been asserted, the State must of course honor it.'" *Crawford v. State*, 716 So. 2d 1028, 1038 (Miss. 1998) (quoting *Morgan v. State*, 681 So. 2d 82, 90 (Miss. 1996)).

> The purpose of the Sixth Amendment counsel guarantee--and hence the purpose of invoking it--is to "protec[t] the unaided layman at critical confrontations" with his "expert adversary," the government, after "the adverse positions of government and defendant have solidified" with respect to a particular alleged crime. *Gouveia*, 467 U.S., at 189 [104 S.Ct., at 2298]. . . .

> *McNeil v. Wisconsin*, 501 U.S. [171], ---, 111 S. Ct. 2204, 2208-09, 115 L.Ed.2d 158, 168-69 (1991).

> * * *

> Once an accused has asserted the right to counsel at arraignment or a similar proceeding, the police may not initiate interrogation. If the police initiate interrogation after the right has been asserted, any waiver by the defendant for that interrogation is invalid. *Michigan v. Jackson*, 475 U.S. 625, 636, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631, 642 (1986). "[A]fter the Sixth Amendment right to counsel attaches and is invoked, any statements obtained from the accused during subsequent police-initiated custodial questioning regarding the charge at issue (even if the accused purports to waive his rights) are inadmissible." *McNeil v. Wisconsin*, 501 U.S. [171], ----, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158, 169 (1991) .

*Balfour v. State*, 598 So. 2d 731, 740-42 (Miss. 1992).

¶25. The record indicates that the Hattiesburg Police Department requested that Officer Pickens interrogate Porter. Pickens complied on November 18, 1993 -- two days after Porter invoked his right to counsel at the initial appearance. There is no evidence that Porter initiated the interrogation by Pickens. Therefore, the November 18, 1993, confession is inadmissible, and this case should be reversed and remanded. *See id.*.

¶26. If Porter's November 18, 1993, confession had duplicated the statements made prior to the attachment and invocation of Porter's Sixth Amendment rights, then the admission of the later confession might have been deemed harmless. *See Willie v. State*, 585 So. 2d 660, 670 (Miss. 1991). However, the improperly obtained confession was Porter's sole admission that he actually shot Brown. Porter's earlier statements only indicated that he knew of Saunders' plan to have someone killed, and had recommended Stewart for the job. Therefore, the admission of the improperly obtained confession was highly prejudicial to Porter.

¶27. In sum, although the trial judge was not asked to rule on this issue, the documents from the initial appearance indicate that Porter's Sixth Amendment right to counsel had attached and had been invoked prior to the November 18, 1993, interrogation by Officer Pickens. Therefore, the statement should not have been admitted. For this reason, the case is reversed and remanded. However, given the fact that this issue was first raised on appeal, the trial judge is not precluded from fully examining all facts pertaining to the initial appearance on remand.

## Whether the trial court erred in submitting to the jury the aggravating circumstance instruction that the appellant knowingly created a great risk to many persons?

¶28. In addition, Porter argues that the evidence did not support jury instruction C-9, which contained the following aggravating circumstance: that the defendant knowingly created a great risk of death to many persons. This aggravating circumstance was one of the four aggravating circumstances found by the jury to exist beyond a reasonable doubt. *See*Miss. Code Ann. § 99-19-101 (5) (1994) (enumerating eight possible aggravating circumstances).

¶29. However, Porter did not contemporaneously object to the granting of this instruction, or raise the issue in his post-trial motions. Therefore, Porter is procedurally barred from raising the matter on appeal. *See Davis v. State*, 660 So. 2d 1228, 1251 (Miss. 1995).

¶30. Nonetheless, if similar evidence is presented on remand, the jury should not be instructed on this aggravating factor. The evidence indicated that Porter and Stewart were hired to kill Brown. They went to Brown's home on a Saturday morning, and several cars were parked in the driveway. Porter hid outside the doorway of Brown's home. When Brown came to the door, Porter shot him and ran. This evidence is insufficient to support an instruction on whether Porter **knowingly** created a great risk of death to many people.

¶31. Of course, this statutory aggravator is not restricted "to those crimes where very large numbers of individuals were at risk or those where the safety of others than an intended few was jeopardized". *Jackson v. State*, 684 So. 2d 1213, 1235 (Miss. 1996). However, in the case *sub judice*, there is no evidence that Porter **knowingly** created a great risk of death to anyone, other than Brown, his intended victim. This is especially true, given that Porter was acquitted of Cole's murder.

¶32. Therefore, if similar evidence is introduced on remand, then the jury should not be instructed on this aggravating circumstance. *See Ivy v. State*, 589 So. 2d 1263, 1266 (Miss. 1991) ("We do not give jury instructions unless there is an evidentiary basis in the record for it.")

## Whether the trial court erred in refusing to investigate alleged jury improprieties and in relying on the Attorney General's office to determine procedure?

¶33. Porter also contends that the trial judge improperly handled a juror's request to be removed from the jury, which was made shortly after the jury retired to deliberate in the sentencing phase, and before actual deliberations began. This issue is moot, because this case is being remanded for other reasons.

¶34. However, this Court addresses this issue only to emphasize the importance of the prohibition against *ex parte* communications. *See* Miss. Code of Judicial Conduct, Canon 3(A)(4) (prohibiting judge from initiating or considering *ex parte* communications concerning a pending proceeding). Apparently, during

arguments on the matter of the juror who wished to be removed from the panel, the prosecutor consulted Marvin White of the Attorney General's Office. The exact circumstances surrounding the conversation with White are not clear from the record, but it seems that White, via the telephone, made arguments to the trial judge. It appears that defense counsel was in the room, but that he could only hear one end of the conversation between White and the court.

¶35. This Court recognizes that the Attorney General's office is an important resource for prosecutors throughout the State. However, if any party is allowed to make arguments before a trial judge on behalf of the prosecution, the arguments must be made in the presence and hearing of defense counsel. Moreover, defense counsel must be given an opportunity to respond. Judges are to be neutral, and, *ex parte* communications should not be allowed, under any circumstances.

## V. <u>CONCLUSION</u>

¶36. Based on the foregoing, Porter's capital murder conviction and death sentence are reversed. This case is remanded for proceedings consistent with this opinion.

¶37. **REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**PITTMAN, P.J., AND WALLER, J., CONCUR. McRAE, J., CONCURS IN RESULT ONLY. BANKS, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. SMITH, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS AND MILLS, JJ.**

**BANKS, JUSTICE, CONCURRING:**

¶38. I concur in the result and all that is said except that I would recognize no procedural bar to consideration whether an aggravator is supported by the evidence as the majority does ante page 12. Our statute compels that we review the evidentiary support for statutory aggravator. Miss. Code Ann. § 99-19-105(3)(b)(1994) .

**SULLIVAN, P.J., JOINS THIS OPINION.**

**SMITH, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

**PRE-TRIAL ISSUE B.**

¶39. I concur with the majority opinion to reverse as a violation of Porter's Sixth Amendment right to

counsel occurred. However, I cannot agree with majority on two other issues for the reasons stated below.

## SENTENCING PHASE ISSUE J.

¶40. Regarding jury instruction C-9, the majority writes that the "evidence is insufficient to support an instruction on whether Porter **knowingly** created a great risk of death to many people." Majority Opinion at 12. The jury instruction contained the following aggravating circumstance: that the defendant knowingly created a great risk of death to many persons. *See* Miss. Code Ann. § 99-19-101(5)(c) (Rev.1994). I disagree because the evidence clearly shows that Porter knowingly created a great risk of death to many persons.

¶41. The majority states "[t]he evidence indicated that Porter and Stewart were hired to kill Brown. They went to Brown's home on a Saturday morning, and several cars were parked in the driveway. Porter hid outside the doorway of Brown's home. When Brown came to the door, Porter shot him and ran." Majority Opinion at 12. The majority conveniently fails to mention other facts in the record which show that Porter knowingly created a great risk of death to many persons.

¶42. For example, on Friday evening, Porter and Stewart went to Brown's house to carry out the murder, but could not determine that Brown was home. The next morning they returned and parked in the emergency lane of a busy interstate highway behind Brown's home to plan their attack. Eventually, they approached the house located in a residential neighborhood on Saturday morning. At this point, Porter and Stewart were already knowingly creating a great risk of death to many people. Approaching an occupied house in a residential neighborhood on a Saturday morning (when most people are likely to be home) with the undisputed intent to commit a homicide with a .9 mm semi-automatic hand gun is **knowingly** creating a great risk of death to many people. But there is more.

¶43. Stewart knocked on the door, and Natasha Cole answered. He asked to speak to Brown. When Brown approached the door, Porter stepped inside and shot Brown. After they returned to the car, Stewart told Porter that Cole had recognized him. Porter gave Stewart the gun and told Stewart that he knew what he had to do. The jury could have reasonably inferred that Porter did not care who else was in the house when he shot Brown or that Porter ordered Stewart back into the house to kill Cole. By his initial actions Porter **knowingly** created a great risk of death to many persons. He compounded that risk by sending Stewart back into the house. Anyone who happened to be in the house, who approached the house upon hearing the shots, or who was walking down the street at that moment was at great risk of losing his life.

¶44. The law is clear in this regard. This Court recently addressed this aggravating circumstance in ***Jackson v. State***, 684 So.2d 1213, 1235 (Miss. 1996), cert denied, ___ U.S. _ _, 117 S. Ct. 1703, 137 L. Ed. 2d 828 (1997), where we stated: "To restrict its use to those crimes where very large numbers of individuals were at risk or those where the safety of other than an intended few was jeopardized would limit the statute beyond its intended scope." In ***Jackson***, four children were stabbed to death and one adult and two other children received life-threatening stab wounds. We found that use of the "great risk to many persons" aggravating circumstance was certainly warranted. 684 So. 2d at 1235.

¶45. In case *sub judice*, the murder of Brown put four other known people at risk, one of whom was ultimately also killed, as well as the possibility of others in the neighborhood or on the nearby interstate highway. Bullets fired in the manner as established by the facts here are not bound by the laws of gravity and physic to stop their path of trajectories once they are fired at some intended victim. Bullets often

continue through victim's bodies, ricochet off walls, or other objects, and strike other unintended targets. In *Jackson*, this Court followed the persuasive Alabama example, as follows:

> We . . . adopt instead the position taken by our sister jurisdiction in *Ex parte Giles*, 632 So.2d 577 (Ala.1993), where the defendant, like Jackson, asserted that the aggravator applied only to those instances where there was a great risk to those other than the **intended** victims. The Alabama court held that "[i]t would be anomalous to hold that § 13-11-6(3) allows sentence enhancement where the defendant **unintentionally** endangers persons other than the homicide victims, but disallows enhancement where the defendant **intentionally** threatens the lives of others." *Id*. at 584 (emphasis added). It further has found that the aggravating circumstance is applicable where there are multiple victims. *Giles v. State*, 632 So.2d 568, 573 (Ala.1992)(evidence showed that defendant killed husband and wife, shot their daughter in the eye and one son in the chest and stabbed another); *Wesley v. State*, 575 So.2d 108 (Ala.Cr.App.1989), rev'd on other grounds, 575 So.2d 127 (Ala.1990)(defendant killed two people, wounded three and attempted to murder a policeman).

*Jackson*, 684 So. 2d at 1235(emphasis in original). The Alabama courts have also found that firing a pistol and shotgun in a yard and neighborhood where other people are present satisfies this aggravator. *White v. State*, 587 So.2d 1218, 1232 (Ala. Crim. App. 1990), aff'd sub nom. *Ex parte White*, 587 So. 2d.1236 (Ala. 1991), cert denied sub nom. *White v. Alabama*, 502 U.S. 1076 (1992).

¶46. Without dispute, the facts show that Porter and Stewart killed two people and endangered the lives of others in the house as well as those in the residential neighborhood to such an extent as to satisfy *Jackson*. Therefore, I can see no reason why the jury should not be instructed on this aggravating factor on remand.

### SENTENCING PHASE ISSUE Q.

¶47. Although the issue is moot, the majority writes concerning alleged jury improprieties and the trial judge's reliance on the Attorney General's Office for advice. While the record is unclear as to the specifics, the trial judge had a conversation with Assistant Attorney General Marvin White of the Attorney General's Office. The defense claims and the majority writes "that White, via the telephone, made arguments to the trial judge. It appears that defense counsel was in the room, but that he could only hear one end of the conversation between White and the court." Majority Opinion at 13. I agree that there should not be *ex parte* communications by the trial judge with the Attorney General's office regarding a question posed by trial counsel. In my view, both the State and defense counsel are entitled to be privy to the Attorney General's advice to the trial judge. However, this record does not clearly show that the conversation was in fact *ex parte*. Without a more developed record, it is presumptuous of the majority to chastise the trial judge for an alleged *ex parte* communication. *See* Code of Judicial Conduct , Canon 3(A)(4).

¶48. Moreover, in the case *sub judice,* the trial judge was apparently given accurate advice which ultimately prevented a procedural error from being committed. The Attorney General's office is an important resource for prosecutors, and nothing in this Court's opinion should be taken as a reason for prosecutors not to consult that office.

¶49. For these reasons, I concur with the majority's opinion to the extent that it reverses because of a violation of Porter's Sixth Amendment right to counsel, but I respectfully dissent from the majority's opinion as to the Sentencing Phase Issues J and Q.

**ROBERTS AND MILLS, JJ., JOIN THIS OPINION.**

1. Porter marked "Yes" in response to the following question: "Do you want to talk to a lawyer before or during the time you are questioned."

2. The record does not indicate that Porter was appointed counsel at his November 16, 1993, initial appearance. However, Miss. Unif. Crim. R. of Cir. Ct. Prac. 1.05 (which was in effect at the time of Porter's initial appearance) provided as follows: "Counsel shall be appointed no later than the time of initial appearance . . . ." Therefore, even though Porter's counsel was apparently not appointed at the initial appearance, such an appointment should have been made.