# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-KA-00031-SCT

*VICKIE SWINNEY*

*v.*

*STATE OF MISSISSIPPI*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 11/20/1998 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS HENRY FREELAND, IV |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | JOHN RICHARD YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED-10/31/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The motions for rehearing are granted. The original opinions are withdrawn, and these opinions are substituted therefor.

¶2. Vickie Swinney appeals to this Court from the Circuit Court of Alcorn County where she was convicted of the capital murder of Thomas (Don) Harville based on the underlying felony of robbery and sentenced to life in prison without the possibility of parole.

¶3. She was also convicted of the aggravated assault of William Morrison and sentenced to twenty years' imprisonment, with both sentences to be served consecutively. Swinney claims that unreasonable delay in bringing her before a judicial officer for her initial appearance resulted in statements by her that were used against her at trial, allegedly in violation of her right to counsel. Swinney also claims that the circuit court erred in admitting only excerpts of these statements, allegedly out of context. Finally, Swinney argues that the State failed to prove the underlying felony of robbery, and in the alternative, that any proof of robbery consisted only of circumstantial evidence, and that the circuit court erred in failing to give a circumstantial

evidence jury instruction.

¶4. We find the procedural bar applies to Swinney's issue of right to counsel as she did not present and argue that specific issue to the trial judge for his ruling. Alternatively, we find that Swinney knowingly and voluntarily waived that right before giving the statement. Her confession was voluntary and, therefore, admissible. As a result, the circuit court did not abuse its discretion in failing to grant a directed verdict on the charge of robbery, and it did not err in failing to grant a circumstantial evidence jury instruction. While the failure to admit her entire statements made to police officers was erroneous, Swinney has failed to show that it prejudiced the outcome of her case. For the foregoing reasons, the judgment of the circuit court is affirmed.

## PROCEDURAL HISTORY

¶5. Vickie Swinney ("Swinney") and her brother, Nicholas Swinney ("Nicholas"), were indicted for the November 17, 1997, capital murder of Thomas Harville and aggravated assault of William Morrison on December 10, 1997. Swinney's motion for a severance, seeking a separate trial from Nicholas, was granted.

¶6. While waiting for her initial appearance, Swinney made a series of statements to the police. She subsequently moved to suppress these statements, claiming that they were the result of an unreasonable delay in bringing her before a judge, were taken in violation of her right to counsel, and that they were coerced by a threat that "if she did not confess to killing Don Harville then she would never see her child again."

¶7. Two hearings were held on this motion on July 22, 1998, and November 6, 1998. The circuit judge overruled the motion in the July 22 hearing, holding that she had an initial appearance within the forty-eight hour time period required by URCCC 6.03 and that the delay was not unreasonable. At the November 6 hearing, the judge overruled the motion to suppress Swinney's statements based on coercion without making findings of fact.

¶8. Swinney was tried beginning November 16, 1998, and was found guilty of capital murder and aggravated assault. She was sentenced to life imprisonment without the possibility of parole, and to twenty years' imprisonment, to be served consecutively. The court entered a judgment on the jury verdict on December 10, 1998. Swinney moved for a judgment notwithstanding the verdict or in the alternative, a new trial on December 14, 1998, which was denied the following day.

## FACTS

¶9. Vickie Swinney ("Swinney") and her brother Nicholas ("Nicholas") entered Don's Pawn Shop at approximately 2:15 p.m. on November 17, 1997. Don Harville, the owner, and two customers were in the store at that time. One of the customers, Sandra Vincent, identified the heavier, shorter sibling as Swinney and the taller one as Nicholas. After about twenty minutes, the two customers walked out, leaving Swinney, Nicholas, and Harville alone in the store.

¶10. Swinney gave Harville two rings to pawn. As he turned to weigh the rings, Swinney pulled out a pistol and shot Harville in the back. William Morrison then entered the store and found Harville on the floor holding his chest. As he was attempting to call 911, he heard a loud "pow." Realizing it was gunfire, he ran for the door and was shot from behind. Morrison fell out of the doorway. One person ran from the store

and jumped over him, and then a second, heavy-set person came out and stepped over him.

¶11. Morrison testified that he managed to crawl to the passenger side of his car, "and as I looked up, this second person that had ran out, the heavier set of the two, had got to the car and seen me still moving. And she reached into the car and pulled out a pistol." Morrison testified that he then ran into the street and another shot was fired.

¶12. This version of events was contradicted by other witnesses, who testified to what occurred outside the pawn shop. Teresa and Scott Crum testified that Morrison exited the store and a slender black man ran past him. They said that the man with the gun saw Morrison moving and turned back toward him. As the gunman pointed his weapon at Morrison, the Crums backed their vehicle between them in an attempt to protect Morrison. The man then ran to the passenger side of his own vehicle as a heavy set person was backing it up. Scott Crum stated unequivocally that the person outside the pawn shop with the gun was not Vickie Swinney.

¶13. When they were arrested at a police roadblock, Swinney was driving. A Glock 9-millimeter pistol was found on the floor near the passenger side of the car, and a clip was found where Nicholas had been sitting in the car. At the jail, an officer found two 9-millimeter bullets in Swinney's pocket.

¶14. While in custody, Swinney made several statements which are at the heart of this appeal. Captain Billy Clyde Burns of the Corinth Police Department testified that he interviewed her at approximately 5:00 p.m. on November 17, 1997, and obtained a tape recorded statement which was later transcribed. She said that she went to the pawn shop to pawn two rings and that Harville offered her $30.00 for them. Swinney also claimed that Nicholas was the gunman and that she at no time fired the gun. She also stated that she exited the store before Nicholas and was walking to her car when Morrison was shot.

¶15. Burns informed her that a gunshot residue kit would conclusively determine whether she had fired a gun recently. She then claimed to have fired a toy gun, which pops like a real gun, but has a dart in it. When told that a toy gun would not account for gunshot residue, she changed her story and said that she had fired a gun that day. She said that she was at the house of her friend, Manresa Hurd, that day and another friend had a gun that was jammed. She said that she then took the gun, "squeezed it," and it went off, putting a hole in the wall or ceiling. Hurd testified that no gun had been fired in her house that day and that she did not see Swinney with a gun. She also testified that Swinney was at her house that day and that Swinney said that she was unhappy and needed money.

¶16. At approximately 9:00 a.m. on November 19, 1997, an investigator for the District Attorney's office, Ralph Dance, confronted Swinney about her previous statements. She then said that she was talking to Harville about pawning the rings. When he turned to weigh the rings, she pulled the gun out, but it was jammed. When she attempted to unjam the gun, it went off and shot Harville in the back. Dance wrote this statement down, but it was not tape recorded, and Swinney refused to sign it.

## DISCUSSION

### I. WHETHER THE STATE UNREASONABLY DELAYED SWINNEY'S INITIAL APPEARANCE FOR THE PURPOSE OF INVESTIGATION WHERE THE DELAY RESULTED IN A CONFESSION AND SWINNEY HAD REQUESTED COUNSEL.

¶17. Swinney argues that URCCC 6.03 requires that defendants to be brought for an initial appearance

within forty-eight hours **and** without unnecessary delay. Swinney was brought before a judge approximately forty-three hours after her arrest. She argues that law enforcement was prepared to go forward with her arraignment on November 18, but delayed until 2:00 p.m. November 19 at the request of the District Attorney's office for the improper reason of "investigation."

¶18. Swinney further argues that this delay resulted in a violation of her constitutional right to counsel under U.S. Const. amend. VI and Miss. Const. art. 3, § 26. The statements that were used to convict her were obtained during the aforementioned delay and after she had requested counsel. Therefore, she argues, they should have been suppressed.

¶19. The court admitted the statements at the suppression hearing of July 22, 1998, holding that the delay was necessary in order to determine what charges to bring against Swinney. "I see nothing unreasonable under the facts and circumstances of this case in not bringing this defendant before a judicial officer at an earlier time. There might very well have been two capital murder cases to result from this . . . certainly the State has the right and the responsibility to investigate [what charges to bring]."

¶20. The watershed case on this issue is *County of Riverside v. McLaughlin*, 500 U.S. 44, 56-77, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). In *McLaughlin*, the United States Supreme Court held that while an initial appearance within forty-eight hours will generally suffice, it nonetheless may not pass constitutional muster "if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delays are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *Id.* The Court gave examples of reasonable delays, such as transporting defendants, late-night bookings, securing the premises of arrest, "and other practical realities." *Id.* Furthermore, after forty-eight hours have passed, "the burden shifts to the [State] to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id.* at 57.

¶21. In Mississippi, an initial appearance under URCCC 6.03 includes a probable cause determination, and at that time the judge will inform the defendant of her right not to incriminate herself, her right to an attorney, her right to communicate with her attorney, family or friends, her right to a preliminary hearing, and the conditions under which she may obtain release, if any. As noted above, the Rule requires that every person in custody shall be taken for an initial appearance "without unnecessary delay and within 48 hours of arrest."

¶22. Though *McLaughlin* speaks to "unreasonable delays" and Rule 6.03 addresses "unnecessary delays, " the two terms are used interchangeably here. The predecessor to Rule 6.03, UCRCCP 1.04, predated *McLaughlin* and required an appearance without "unnecessary delay," but did not contain the "within 48 hours of arrest" requirement. Rule 6.03 became effective May 1, 1995, approximately four years after *McLaughlin,* and reflects the ruling in that case. Thus, it is an adoption of the Supreme Court's rule, despite the use of the term "unnecessary" rather than "unreasonable."

¶23. To satisfy the dictates of Rule 6.03 and prevailing case law, arrested persons must be afforded an initial appearance both (1) within 48 hours, and (2) without unnecessary delay. We have defined "without unnecessary delay" to mean "as soon as custody, booking, administrative and security needs have been met."*Evans v. State*, 725 So.2d 613, 644 (Miss. 1997) (citing *Abram v. State*, 606 So.2d 1015 (Miss. 1992)). "Once these needs have been met, there is but one possible excuse for delay: lack of access to a judge."*Abram,* 606 So.2d at 1029. In *Abram*, the defendant was not brought for an initial appearance until

approximately 72 hours after his arrest, immediately after he confessed. *Id.* We held that Abram would not have confessed had he been given an initial appearance and, consequently, access to counsel. This was deemed reversible error because Abram's conviction for capital murder was based entirely on his confession. *Id.*

¶24. Even if it occurs within forty-eight hours, an initial appearance is unconstitutional if the defendant can show that the hearing was delayed for an impermissible purpose, such as "gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *McLaughlin,* 500 U.S. at 66. In Mississippi, an initial appearance within 48 hours may also be unconstitutional if the defendant can show that the delay was not necessary for custody, booking, administration, or security, and was not caused by lack of access to a judge. *Evans,* 725 So.2d at 644.

¶25. In the case at bar, Corinth Chief of Police Fred Johnson told local media that the "arraignment was set for today [Tuesday] but at the request of the District Attorney, the arraignment will be held at 2 p.m. on Wednesday." Swinney argues that this statement proves that custody, booking, administration, and security needs were met on Tuesday, November 18. In addition, a circuit court judge was present in Alcorn County for the civil term of court during the week beginning November 17, 1997. Therefore, Swinney argues, the appearance was delayed from Tuesday until Wednesday for an impermissible purpose. The circuit court disagreed, holding that the delay was necessary to determine whether double murder charges should be brought against Swinney. Prior to May 1, 1995, the predecessor Rule 6.03 U.C.C.C.R. combined the probable cause determination with the initial appearance. Our present initial appearance requires the judicial officer to "determine whether there was probable cause for the arrest and note the probable cause determination for the record." Thus, there are now additional functions under the new rule at an initial appearance. Under the *Abrams* decision, a probable cause finding was not required. Also, it is noteworthy that Abrams was not brought for an initial appearance until 72 hours after his arrest. Swinney was given an initial appearance within forty-three hours, thus, within the forty-eight hour limit. This was an extremely difficult and problematic case that officers were still investigating and attempting to determine if Swinney could be charged for the second count of murder. We agree with the circuit judge that the minor delay was reasonable under the facts of this case so the officers could determine whether Swinney could be charged with double murder.

¶26. It was during the delay from Tuesday to Wednesday that Swinney made the statement that she accidentally shot the victim in the back. The investigator from the District Attorney's office, Ralph Dance, took two statements on Wednesday morning, November 19, 1997. Swinney was given an initial appearance at 2:00 p.m. that same date. The second statement Swinney gave Dance where she signed the waiver constituted the only direct proof that she pulled the trigger and shot the Harville in the back.

¶27. An accused's right to counsel attaches after arrest and at the point when the initial appearance "ought to have been held." *Jimpson v. State*, 532 So.2d 985, 988 (Miss. 1988) (quoting *May v. State*, 524 So.2d 957, 967 (Miss. 1988)). Swinney was clearly entitled to counsel as of 2:00 p.m. on that date, which was the time of her initial appearance.

¶28. The next questions are whether she specifically invoked her right to have an attorney present prior to the time of her initial appearance and specifically during the second interview that morning or whether she properly waived the confession. "If the individual states that he wants an attorney, the interrogation must cease until his attorney is present." *Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602, 1628, 16

L.Ed. 2d 694 (1966).

¶29. First, we must determine whether Swinney raised the specific issue of right to counsel, presented and argued it before the trial court. We find that Swinney's motion to suppress never presented this specific issue to the trial court for consideration and a ruling thereon. Therefore, Swinney's argument is procedurally barred. *See , e.g.*, *Evans v. State*, 725 So. 2d at 631; *Chase v. State*, 645 So. 2d 829, 845 (Miss. 1994); *Foster v. State*, 639 So. 2d 1263, 1270 (Miss. 1994); *Cole v. State* 525 So. 2d 365, 369 (Miss. 1987); *Irving v. State*, 498 So. 2d 305 (Miss. 1986); *Johnson v. State*, 477 So. 2d 196 (Miss. 1985); *In re Hill*, 460 So.2d 792 (Miss. 1984); *Hill v. State*, 432 So. 2d 427 (Miss. 1983).

¶30. Alternatively, Swinney's argument is without merit. Swinney's motion to suppress before the trial court is totally lacking of the argument that request for counsel barred further questioning by the officers. Defense counsel's arguments for suppression instead focused on the delay in the initial appearance. Swinney failed to directly argue to the judge that she invoked her *Miranda* right to an attorney during the interview process and that the officer ignored her request and questioned her further. Because she did not raise the specific issue, the trial judge did not address this ground for suppression in his bench ruling on the motion. The trial judge instead focused on this issue by Swinney's counsel and ruled that "the motion of the defendant to suppress the statement given to the investigator, Mr. Dance, at or about nine o'clock and following that time on the 19th day of November, 1997, is overruled."

¶31. Although she mentioned asking for an attorney during testimony, neither her counsel, the district attorney, nor the trial judge ever focused upon that issue nor commented or asked further questions thereafter. It is as though the comment was an afterthought by Swinney while she was testifying. The timing of the statement and the initial appearance does not support Swinney's argument. Dance's questioning of Swinney commenced at 9:00 a.m. and her initial appearance was at 2:00 p.m. After the first statement was given, Dance stated that he confronted Swinney concerning the contradictory facts she had given, whereupon, Swinney admitted in the second statement that she had indeed shot Don Harville. Swinney thus claimed during her testimony at the suppression hearing that she asked for a lawyer and fifteen minutes later she was in court, a fact which is virtually an impossibility. Dance testified that he took the second contradictory statement from Swinney immediately after the first statement. More importantly, Swinney confirmed subsequently that her two statements were given within one hour of each other. Swinney, in fact, never claimed that Dance continued to ask her questions after she claims that she asked for a lawyer. Swinney testified that Dance stated simply, "that I didn't need one because he wasn't doing nothing but talking at that time." Neither her counsel, the district attorney or the trial judge followed up with any question regarding whether Dance actually asked her any additional questions. We are thus left to speculate at to this subject, and this Court cannot do so.

¶32. The trial court after hearing conflicting testimony, made a finding of fact. This Court should not overturn a trial court ruling unless it is clearly erroneous or contrary to the overwhelming weight of the evidence. *See, e.g.*, *Dancer v. State*, 721 So. 2d 583, 587 (Miss. 1998); *McGowan v. State*, 706 So. 2d 231, 235 (Miss. 1997); *Morgan v. State*, 681 So. 2d 82, 87 (Miss. 1996); *Alexander v. State*, 610 So. 2d 320, 326 (Miss. 1992); *Stokes v. State*, 548 So. 2d 118, 122 (Miss. 1989); *Woodward v. State*, 533 So. 2d 418, 427 (Miss. 1988); *Hall v. State*, 427 So. 2d 957, 960 (Miss. 1983); *Ratliff v. State*, 317 So. 2d 403, 405 (Miss. 1975)

¶33. Once the right to counsel is invoked, an interrogation may only continue if the defendant initiates further

discussions with police, and knowingly, intelligently, and voluntarily waives the right. *Smith v. Illinois*, 469 U.S. 91, 95, 105 S.Ct. 490, 83 L.Ed. 2d 488 (1984). The holding in *Smith* had its origins in *Edwards v . Arizona*, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981). This is a two-fold requirement for a defendant as Swinney would have to have initiated the interrogation and waived the right to counsel once she invoked right to counsel. Whether there has been an intelligent, knowing, and voluntary waiver is essentially a factual inquiry to be determined by the trial judge from the totality of the circumstances. *Neal v. State*, 451 So.2d 743, 753 (Miss. 1984) (collecting authorities). If the trial judge applied the correct legal standard and if there is substantial evidence to support the finding, an affirmance is generally required. *Id.*

¶34. In ruling this statement admissible, the trial court did so without stating the legal standard it applied and without making findings of fact. At the suppression hearing, Dance testified that he and Swinney were alone during the questioning at issue, which took place in "a small office in the back of the police department." He did not deny that Swinney requested counsel before signing the waiver, or that he told her to "go ahead and sign it" because she did not need a lawyer.

¶35. Dance testified to the contents of the waiver as follows: Swinney has an eleventh-grade education; she can read and write; she understands her right to remain silent and have a lawyer present during questioning, and she was willing to talk to him at that time. She signed the waiver underneath a note that says "I understand my rights."

¶36. The transcript of the suppression hearing shows that Swinney had been informed of her rights at least four times and had signed a rights waiver with Dance and Billy Whitehead when she gave her first statement on November 17. After apparently refusing to sign two other rights waivers, Swinney signed the last one on November 19, just before her confession.

¶37. For a waiver of counsel to be valid, it "must not only be voluntary, but must also constitute a knowing abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused.'" *Cannaday v. State*, 455 So.2d 713, 723 (Miss. 1984) (citations omitted). Under this standard, there is substantial evidence to support a finding that Swinney was aware that she was entitled to refuse to sign the document and that she did so voluntarily, as she had refused to do so twice before. She therefore waived her right to counsel before making the inculpatory statement.

¶38. Swinney further alleges that her confession was not given voluntarily because Dance told her "If you don't tell me you did it, you won't see your son anymore."

¶39. "For a confession to be admissible, it must have been given voluntarily and not given because of promises, threats, or inducements." *Dancer v. State*, 721 So.2d at 587 (citations omitted). Where the voluntariness of a confession is put at issue, the State bears the burden of proving voluntariness beyond a reasonable doubt. *Neal v. State*, 451 So.2d at 753. The admissibility of a confession is essentially a fact-finding function, and as long as the trial court applies the correct legal standards, we will not overturn a judge's finding of fact unless it is clearly erroneous or not supported by substantial evidence. *Dancer,* 721 So.2d at 587. Where the trial court admits a statement into evidence based on conflicting evidence, this Court must generally affirm. *Id.*

¶40. In overruling Swinney's motion to suppress the confession, the circuit court did not undertake a legal

analysis; it did not identify a legal standard and apply it to the facts before the court. However, a trial judge's determination that a confession is admissible becomes a finding of fact and will not be disturbed unless manifestly incorrect or against the overwhelming weight of the evidence. *Applewhite v. State*, 753 So.2d 1039, 1041 (Miss. 2000).

¶41. When this confession was given, there were only two people present in the room, Swinney and Dance. Dance testified that he made no such statements to Swinney. The only evidence in the record regarding the voluntariness of the confession is the testimony of Swinney and Dance. When the circuit court admitted the statements, it decided as fact-finder that Dance was the more credible witness. The trial court's decision was based on substantial evidence after hearing conflicting testimony from Dance and Swinney. The trial court's ruling is not clearly erroneous or contrary to the overwhelming weight of the evidence. Thus, we find no error here.

## II. WHETHER THE CIRCUIT COURT ERRED IN ADMITTING INCRIMINATING PORTIONS OF SWINNEY'S STATEMENTS TO POLICE, BUT EXCLUDED EXCULPATORY STATEMENTS.

¶42. On a motion in limine by the State, the trial judge admitted Swinney's confession into evidence as an admission under M.R.E. 801(d)(2), but excluded portions of her three previous statements to police where she said "I didn't do it" as inadmissible hearsay. Specifically, the court prevented the defense from questioning the officers about the exculpatory statements on cross-examination.

¶43. Swinney argues that if inculpatory portions of the statements she gave to police while in custody are admitted, then the entire statements must be admitted, including her exculpatory statements. As authority, she cites the following:

> If a statement is admissible in evidence as an admission or declaration, it is admissible as an entirety, including the parts that are favorable, as well as those parts that are unfavorable, to the party offering it in evidence. In the event a statement admitted in evidence constitutes part of conversation or correspondence, the opponent is entitled to have placed in evidence all that was said or written by or to the declarant in the course of such conversation
>
> . . .
>
> The general principles discussed above apply in criminal as well as civil cases. It is an elementary rule of law that when admissions of one on trial for the commission of a criminal offense are allowed in evidence against him or her, all that he or she said in that connection must also be permitted to go the jury . . . The fact that the declarations made by the accused were self-serving does not preclude their introduction in evidence as a part of the whole statement.

29A Am. Jur. 2d *Evidence* § 759, at 122-23 (1994) (emphasis added). Swinney also cites *McIntyre v. Harris*, 41 Miss. 81 (1866), for the proposition that where a part of a conversation is introduced into evidence, opposing counsel has a right to draw out the rest of the conversation on cross-examination.

¶44. The fact that Swinney thrice denied killing Harville brings into question the veracity of her admission. She should have been allowed to question the officers regarding her entire statement on cross-examination. The fact that the State only used selected portions of her statement in its case in chief also may indicate bias by the State's witnesses in not being forthcoming with exculpatory evidence.

¶45. Furthermore, as was argued by Swinney at trial, adopting a rule such as that applied by the circuit court may force the defendant to testify to her statement in order to place it, in its entirety, before the jury. This may operate to subvert the accused's right not to testify in her own defense.

¶46. Therefore, the circuit court erred when it admitted the portions of Swinney's statements that favored the State's theory of the case while not allowing Swinney to draw out on cross-examination those portions of the statements that favor her position. However, Swinney has failed to show that this error has prejudiced the outcome of her trial. As a result, this error is harmless.

### III. WHETHER THE CIRCUIT COURT ERRED IN FAILING TO GRANT A DIRECTED VERDICT AS TO ROBBERY.

¶47. Swinney argues that the only proof of robbery is that she had a motive because she needed money. All of the other evidence, she contends, relates to the crime of murder.

¶48. In judging the sufficiency of the evidence on motion for a directed verdict, the evidence is to be viewed in the light most favorable to the State and all credible evidence supporting the conviction is to be taken as true, such that the State receives the benefit of all favorable inferences reasonably drawn from the evidence. *Birkley v. State*, 750 So.2d 1245, 1255 (Miss. 1999) (collecting authorities). Issues regarding weight and credibility of evidence are for the finder of fact to resolve. *Id.*

¶49. Swinney had a motive to commit robbery. She told her friend that she was unhappy because she needed money, and her friend was afraid that she was going to get into trouble. She and her brother went to Don's Pawn Shop and waited approximately twenty minutes until the store was empty. When Harville turned around to weigh her rings, she shot him in the back by her own admission. Immediately afterward, William Morrison entered the store. He was shot, and immediately thereafter Swinney and Nicholas fled the store.

¶50. When they were apprehended, the siblings did not have any stolen property from Don's Pawn Shop in their possession. From this it may be reasonably inferred that the robbery was interrupted by Morrison, and that had he not entered the store when he did, Swinney and Nicholas would have left with Harville's property.

¶51. The jury's verdict was based on evidence sufficient to support a finding of robbery. Therefore, the circuit court did not err in refusing to grant a directed verdict as to robbery.

### IV. WHETHER THE CIRCUIT COURT ERRED IN REFUSING TO GIVE A CIRCUMSTANTIAL EVIDENCE INSTRUCTION.

¶52. Swinney claims that the only proof of robbery was circumstantial evidence. She correctly notes that circumstantial evidence instructions are required where the only evidence of the crime is circumstantial. In other words, "when the prosecution is without a confession and without eyewitnesses to the gravamen of the offense charged." *Woodward v. State*, 533 So.2d at 431. We have held failures to grant such an instruction where one is required to be reversible error. *Simpson v. State*, 553 So.2d 37, 39 (Miss. 1989).

¶53. Here, all elements of the crime were not shown solely by circumstantial evidence. Swinney admitted

that she pointed a gun at Harville and that she accidentally shot him in the back while attempting to unjam the gun. An essential element of robbery is the use of force or intimidation. Her confession constituted direct evidence of this element of robbery. Therefore, this assignment of error is without merit.

## CONCLUSION

¶54. Although her initial appearance was delayed slightly, we find that this delay was reasonable under the facts of this case and was still within forty-eight hours as required. We find that Swinney failed to specifically present and argue at trial that she did not waive her right to counsel, and thus we apply the procedural bar to this issue. Alternatively, we find that Swinney's confession was free and voluntary and that she knowingly waived her right to counsel. We also find that while the failure to admit her entire statements made to police officers was erroneous, Swinney has failed to show that it prejudiced the outcome of her case. Finally, we find that the circuit court did not err in failing to grant a directed verdict for the charge of robbery and did not err in failing to grant a circumstantial evidence jury instruction. Therefore, the judgment of the circuit court is affirmed.

¶55. **COUNT I: CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT WITHOUT ELIGIBILITY OF PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IN ACCORD WITH MISS. CODE ANN., SECTIONS 99-19-101 AND 97-3-19, 1972, ANNOTATED, AFFIRMED. COUNT II: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THE SENTENCES ARE TO RUN CONSECUTIVELY WITH EACH OTHER.**

> **WALLER, COBB, DIAZ, EASLEY AND CARLSON, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY. PITTMAN, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J.**

> **PITTMAN, CHIEF JUSTICE, DISSENTING:**

¶56. In this instance, we have uncontradicted testimony that a prisoner under investigation for murder invoked her right to counsel, yet the interrogation by a police officer continued. This much is <u>admitted</u> by the State in its response to the motion for rehearing. In the face of this error, the majority applies the appellate procedural bar and, alternatively, finds Swinney's arguments that her right to counsel was denied to be without merit. I disagree. Therefore, I respectfully dissent.

¶57. In her motion to suppress, Swinney claimed under both the Fifth and Sixth Amendments to the United States Constitution that her confession was involuntary because she was not provided with counsel. In my opinion, this motion was sufficient to put all parties on notice that the delay in bringing her before an impartial magistrate was not the only grounds for suppressing the incriminating statement. It also encompassed a specific request for counsel which fell upon deaf ears. By applying the procedural bar in this case, this Court sanctions injustice. The right to counsel is one of the fundamental rights of the Constitutions which we interpret. *See **Beckum v. State***, 786 So. 2d 1060, 1062-63 (Miss. 2001). Other than the suppression motion-which raises and preserves this error for our review-violations of fundamental rights are also subject to plain error review. ***Porter v. State***, 732 So. 2d 899, 902-05 (Miss. 1999). I find that both these avenues place this issue squarely before the Court. Therefore, I find the use of the procedural bar inappropriate.

¶58. In the alternative, the majority addresses Swinney's arguments and deems them to be without merit. I must disagree. The majority makes much of Swinney's testimony about the timing of the statement and the initial appearance. I do not fault Swinney for her lack of exactness here because possibly any watch she might have been wearing was confiscated before her incarceration, leaving her to only estimate the passage of time in her testimony. It is difficult for an incarcerated and interrogated person to note the time or its importance. The majority also makes much of the fact that Swinney did not testify that the interview continued after her request for counsel. This assertion begs the question why would Ralph Dance tell her that she did not need an attorney because they were just going to talk if he already had this last and most important statement? Was she lying when she testified that she invoked her right to counsel? Perhaps. But for this Court to say or even imply that she was lying engages in the type of speculation the majority denounces. As I have stated above, this testimony is uncontradicted and consistent with her prior testimony, and the State admits this in its reply to the motion for rehearing.

¶59. And what if her statement is true? This Court must not condone taking a prisoner in a back room without recording devices and denying her the legal counsel she requests. *See generally **Balfour v. State***, 598 So. 2d 731 (Miss. 1992). Swinney did waive her right to counsel, but invoked it once again before making the inculpatory statement. That statement is therefore inadmissible. Accordingly, I conclude that her right to counsel was violated and differ with the majority on this point. I would reverse the trial court's judgment and remand this case for a new trial consistent with this opinion.

**GRAVES, J., JOINS THIS OPINION.**