# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-DP-00614-SCT

*MARTEZ ABRAM A/K/A MARTEZ TARRELL ABRAM*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/28/2022 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| TRIAL COURT ATTORNEYS: | JALEESA RENE' SEALS |
| | TORI ELAINE WILLIAMS |
| | JOHN D. WATSON |
| | JOHN KEITH PERRY, JR. |
| | JESSICA MASSEY CARR |
| | JOHN W. CHAMPION |
| | LUKE PATRICK WILLIAMSON |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN KEITH PERRY, JR. |
| | GARRET TYJUAN ESTES |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PARKER ALAN PROCTOR, JR. |
| | LADONNA HOLLAND |
| | ALLISON K. HARTMAN |
| DISTRICT ATTORNEY: | ROBERT R. MORRIS |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - DIRECT APPEAL |
| DISPOSITION: | AFFIRMED - 08/07/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1. On July 27, 2019, Martez Abram was suspended from his employment at the Southaven, Mississippi, Walmart after a coworker reported that Abram had threatened him

with a knife. Just three days later, Abram carried out a deliberately planned attack targeting those he blamed for his suspension. He shot and killed two Walmart managers, Anthony Brown and Brandon Gales and subsequently set fire to the store before attempting to escape.

¶2. Surveillance footage recorded the events of July 30, 2019, and Abram admitted the killings and arson during trial. A DeSoto County jury convicted Abram of two counts of capital murder and one count of attempted murder for shooting Officer Brandon Billingsley during his escape. The jury sentenced Abram to death for each capital-murder conviction and life imprisonment for the attempted murder.

¶3. On appeal, Abram argues that: (1) the circuit court erred by admitting evidence from locations other than the crime scene; (2) the evidence was insufficient to support Abram's capital-murder convictions because the arson and murders were not one continuous transaction as required by Mississippi law; (3) the verdicts related to capital murder were against the overwhelming weight of the evidence; and (4) this Court should abandon the *M'Naghten* Rule[1] as the legal standard for insanity. Upon review, we find no error and decline Abram's request to abandon the *M'Naghten* Rule. Accordingly, Abram's convictions and sentences are affirmed.

## FACTS AND PROCEDURAL HISTORY

*The Events Leading to the Shootings*

¶4. Abram had worked at Walmart in Southaven, Mississippi, for twenty years before

---

[1] *See **M'Naghten's Case*** (1843) 8 Eng. Rep. 718, 10 Clark & F. 200.

being suspended on July 27, 2019. The suspension followed an incident involving coworker Derrick Woolfork, who testified that he and Abram had recently "been getting into it." That morning, Woolfork confronted Abram, who responded by lifting his shirt and showing a knife. Feeling threatened, Woolfork contacted the police. Store manager Anthony Brown subsequently informed Abram that he was suspended until further investigation.

¶5. In the days following his suspension, Abram prepared his retaliatory attack. On July 29, he rented a Kia Soul from the Memphis International Airport and parked his Chevrolet Silverado containing additional firearms at the airport. He stocked the rental car with firearms, loaded magazines, two gallons of gasoline, a bulletproof vest, and his passport. Investigators later recovered a handwritten list titled "things I need" inside the car. The list included reminders to fill a gas container, get a rental car, and "be there" by 5:30. A Walmart employee testified that it was well known among staff that Brown regularly arrived to work around 6:00 a.m.

*The Day of the Shootings*

¶6. Security footage showed Abram arriving at Walmart in the Kia Soul before 6:00 a.m on July 30, 2019. He moved the car between several parking spots before settling in one with a clear view of the lot. At 6:00 a.m., Brown arrived and parked his truck. As Brown walked toward the entrance, Abram drove up and shot him in the neck, without leaving his vehicle. Brown fell and died at the scene.

¶7. After shooting Brown, Abram drove to the front of the parking lot, parked, and

entered the store carrying a black bag filled with firearms, ammunition, and one gallon of gasoline. Carl Whiteside, a maintenance employee, testified that he had seen Abram enter many times before and was not alarmed. Although he noticed Abram carrying something that resembled a gun, he thought it might be a barcode scanner. Whiteside later heard gunfire and an overhead announcement instructing customers and employees to evacuate. Security footage captured Abram chasing store manager Brandon Gales through the aisles. Abram shot Gales once, disabling him, and then he shot Gales again at close range, killing him.

¶8. Employee Kathy Caston testified that she saw Brown's body in the parking lot and initially tried to comfort him but soon realized that he was already dead. She then encountered Abram, who told her, "you're next." She fled and hid under a truck outside. Caston also testified that, two weeks before, she had seen Abram pretending to shoot coworkers using hand gestures. Disturbed by his behavior, she warned Brown and urged him to report Abram's behavior to corporate, but no action was taken.

¶9. Following the murder of Gales, Abram poured gasoline over toilet paper and other flammable merchandise and ignited it with a lighter. He then tossed one of his weapons, a Glock 21 pistol, into the fire. Abram briefly caught fire until he removed his jacket.

¶10. As Abram attempted to flee through the parking lot, he fired on responding officers and bystanders. Officer Brandon Billingsley, a patrol officer with the Southaven Police Department, testified that he was among the first responders to the scene. Once he parked, he exited his vehicle and heard gunshots. Officer Billingsley testified that he was shot in the

4

back and immediately blacked out for a few seconds. The bullet impacted his bulletproof vest but did not penetrate the final layer of the protective material. Officer Billingsley attempted to return fire, but his firearm malfunctioned.

¶11. Officer Kevin Ware of the Southaven Police Department testified that he saw Abram shoot Officer Billingsley and then fired back, striking Abram and causing him to fall. Caston also witnessed Abram shoot Officer Billingsley. Abram was taken into custody and transported to a nearby hospital. Another officer testified that he asked Abram if anyone else was with him, and Abram responded, "no."

*The Investigation*

¶12. Officer Bryan Rosenberg of the Southaven Police Department testified that the Kia Soul contained an AK-47 rifle, multiple loaded magazines from various firearms, body armor, a gas container, and a list of items written by Abram. Mississippi Bureau of Investigation Officer Amber Conn testified that she recovered a Sig Sauer P320 with an extended magazine in the parking lot. Officer Conn also testified about collecting various casings and a melted Glock 21 pistol, which was still loaded and had been partially destroyed by the fire.

¶13. Abram's apartment contained ammunition compatible with the weapons used in the Walmart shootings, though no firearms were found. Agent Jackson Price with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) testified that Abram's Chevrolet Silverado, parked at the airport, contained two rifles and a .38-caliber revolver, along with

5

a 9 mm round that was compatible with one of the firearms recovered from the crime scene.

¶14. ATF Agent Jeffrey Osburg, a certified fire investigator, testified that the fire was set intentionally using an accelerant. He stated that when he and other investigators were clearing the debris from the fire, he noticed a strong smell of gasoline and a melted jug at the origin site in aisle K-9. He also noticed an "irregular burn pattern" that indicated the use of an accelerant. Based on his investigation, Agent Osburg ultimately classified the fire as an incendiary fire that was a result of an intentional application of an open heat source, such as a lighter, to the vapors of an ignitable liquid. His conclusion was supported by security footage showing Abram setting the fire, which appeared as a large bright flash or "flash fire."

*Abram's Psychological Evaluations*

¶15. On June 4, 2020, the circuit court ordered that Abram undergo a mental evaluation conducted by Dr. Criss Lott. The purpose of the evaluation was to (1) determine whether or not Abram had a factual as well as rational understanding of the nature and object of the legal proceedings against him and the ability to reasonably assist his attorney in the preparation of his defense (i.e., whether Abram was competent to stand trial[2]); (2) describe Abram's mental state at the time of the alleged offense(s) with respect to his ability to know the difference between right and wrong in relation to his actions at that time (i.e., whether Abram was *M'Naghten* insane at the time of the offense); and (3) determine whether Abram was

---

[2] *See **Dusky v. United States***, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960).

intellectually disabled pursuant *Atkins v. Virginia*.[3]

¶16.  Dr. Criss Lott evaluated Abram on June 8, 2020, and July 13, 2020.  After interviewing and testing Abram, Dr. Lott opined that Abram had a rational and factual understanding of the proceedings against him and the sufficient present ability to confer with his attorney.  Dr. Lott additionally opined that Abram was not intellectually disabled.  Because Abram refused to discuss his mental state at the time of the murders and arson, Dr. Lott was unable to determine whether he understood the difference between right and wrong when committing the offenses.  Dr. Lott indicated that the diagnosis of "unspecified schizophrenia-spectrum" and "other psychotic disorder" should be ruled out along with malingering.

¶17.  Abram was evaluated by his privately retained expert, Dr. Tucker Johnson, at various times throughout 2020 and 2021.  Dr. Johnson agreed with Dr. Lott that Abram had sufficient present ability to confer with his attorney with a reasonable degree of rational understanding.  Dr. Johnson also agreed that Abram had a factual and rational understanding of the nature and object of the legal proceedings against him.  She opined, however, that Abram suffered symptoms of a "major mental illness" and that Abram was "only intermittently compliant with prescribed psychiatric medications."  Dr. Johnson further concluded that "without appropriate treatment, the stress of trial could lead to a deterioration in [Abram's] mental status to the point where he is no longer competent to proceed."  After reviewing both

---

[3] *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002).

experts' reports, the circuit court found Abram competent to stand trial.

¶18. At some point during preparation for trial, Dr. Johnson's license to practice in Mississippi expired. Abram later retained Dr. David Howard to take over for Dr. Johnson. Dr. Howard evaluated Abram regarding his mental state at the time of the offenses as well as other mitigating factors. In evaluating Abram, Dr. Howard opined that Abram was "genuinely psychotic" at the time of offenses. Dr. Howard concluded, however, that Abram did not meet the criteria for *M'Naghten* insanity because Abram knew his actions at the time of the offenses were wrong.

*Abram's Defense*

¶19. Abram testified during the guilt phase. He claimed only "vague" memories of the incident but admitted shooting Brown and Gales, setting the fire, and shooting Officer Billingsley. He acknowledged that the surveillance video accurately showed his actions and stated, "That's me. I take responsibility for it." During cross-examination, Abram recalled waiting for Brown, bringing gasoline and weapons, and placing the Glock pistol in the fire to destroy it. In addition, Abram admitted fleeing, shooting Officer Billingsley, and storing additional weapons in his truck located at the airport. When asked if he had ever denied his involvement, Abram replied, "no." The jury returned guilty verdicts on both counts of capital murder and one count of attempted murder.

¶20. During the sentencing phase, Dr. Howard testified that Abram was not malingering and was a genuine responder on psychological tests. He diagnosed Abram with major

depressive disorder with psychotic features and possibly a schizophrenia-spectrum condition. Dr. Howard opined that psychosis played a significant role in Abram's actions on July 30.

¶21.    At the close of the sentencing phase, the jury unanimously found beyond a reasonable doubt the following with respect to Count One (Brown's murder): (1) Abram actually killed Brown; (2) Abram intended for Brown's death to occur; and (3) Abram contemplated the use of lethal force.  The jury also found three statutory aggravating circumstances: (1) Abram knowingly created a great risk of death to many people; (2) the capital offense was committed during the attempt or commission of an arson; and (3) the capital offense was committed to avoid or prevent a lawful arrest or to effect an escape from custody.  Although Abram introduced mitigating evidence, including that he had no prior criminal record or mental-health treatment, that he acted while under extreme mental or emotional disturbance, and that his ability to appreciate the criminality of his conduct was impaired, the jury unanimously determined that the aggravating circumstances outweighed any mitigating factors.

¶22.    For Count Two (Gales's murder), the jury found beyond a reasonable doubt that the same facts applied as in Count One with respect to Gales.  The jury further found the same three aggravating factors as in Count One, plus an additional aggravator: that the capital offense was committed to disrupt or hinder the lawful exercise of a governmental function or enforcement of laws.  As with Count One, the jury concluded the aggravating factors outweighed the mitigating factors and unanimously sentenced Abram to death on Count Two.

¶23. For Count Three (attempted murder of Officer Billingsley), the jury imposed a sentence of life imprisonment. Abram subsequently filed a motion for judgment notwithstanding the verdict (JNOV), which the court denied. He now appeals.

## DISCUSSION

¶24. This Court applies a heightened level of scrutiny in death-penalty cases. *Clark v. State*, 343 So. 3d 943, 954 (Miss. 2022) (quoting *Dickerson v. State*, 175 So. 3d 8, 15 (Miss. 2015)). In such cases, claims that are not procedurally barred are reviewed under a heightened-scrutiny standard meaning that "all bona fide doubts are resolved in favor of the accused." *Ronk v. State*, 267 So. 3d 1239, 1247 (Miss. 2019) (internal quotation mark omitted) (quoting *Crawford v. State*, 218 So. 3d 1142, 1150 (Miss. 2016)). Moreover, "what may be harmless error in a case with less at stake becomes reversible error when the penalty is death." *Chamberlin v. State*, 55 So. 3d 1046, 1049-50 (Miss. 2010) (internal quotation marks omitted) (quoting *Flowers v. State*, 773 So. 2d 309, 317 (Miss. 2000)).

**1.     The circuit court did not abuse its discretion by admitting evidence found at locations other than the crime scene.**

¶25. Abram first argues that the circuit court abused its discretion by admitting irrelevant evidence found at two locations outside of the crime scene—Abram's Chevrolet Silverado (located at the Memphis Airport) and Abram's apartment. More than fifty trial exhibits related to the firearms, ammunition, and firearm accessories were retrieved from all three locations. Notably, Abram only objected to the admission of evidence recovered from his apartment.

10

¶26.  Because Abram failed to object to the admission of evidence recovered from his Chevrolet Silverado, he is procedurally barred from doing so on appeal.  This Court has long held that failure to make a contemporaneous objection waives any claim of error as to the evidence admitted, even in a capital case.  *Garcia v. State*, 300 So. 3d 945, 976 (Miss. 2020) (citing *Ronk v. State*, 172 So. 3d 1112, 1134 (Miss. 2015)); *see also Cole v. State*, 525 So. 2d 365, 369 (Miss. 1987).

¶27.  Abram did, however, object to all twelve pieces of evidence recovered from his apartment based on relevance.  This evidence included ammunition and firearm accessories. The State argued that the evidence was relevant because it showed Abram's motive, preparation, plan, and lack of mistake.  *See* Miss. R. Evid. 404(b).  The circuit court ultimately admitted the following items into evidence:

- .45-caliber ammunition (State's Exhibit 27; admitted over objection because a matching round was found in the Kia Soul)

- 9 mm ammunition (State's Exhibit 28; admitted over objection because 9 mm magazine was found in the Kia Soul)

- .38-caliber ammunition (State's Exhibit 30; court admitted over objection based on testimony that the ammunition was the same brand and caliber as the ammunition loaded in firearms found in Abram's Chevrolet Silverado)

- 9 mm magazine compatible with Sig Sauer pistol (State's Exhibit 31; admitted over objection because Sig Sauer magazine was found in the Kia Soul)

- .223-caliber ammunition (State's Exhibit 33; admitted over objection based on testimony that the ammunition was the same brand and caliber as the ammunition loaded in firearms found in Abram's Chevrolet

11

Silverado)

- 7.62-caliber ammunition (State's Exhibit 34; admitted over objection because the ammunition was compatible with the AK-47 ammunition and magazine found in the Kia Soul)

- Loaded AK-47 magazines (State's Exhibit 35; admitted over objection because AK-47 ammunition and magazine were found in the Kia Soul)

- AR-15 loaded magazine (State's Exhibit 36; admitted over objection based on testimony that the ammunition was the same brand and caliber as the ammunition loaded in firearms found in Abram's Chevrolet Silverado)

The court marked the remaining evidence recovered from the apartment for identification only.

¶28. Because evidentiary decisions are within the discretion of the trial court, this Court will not overturn such rulings unless the court abused its discretion in a manner that prejudiced the accused. *Ronk*, 172 So. 3d at 1132. All relevant evidence is admissible. Miss. R. Evid. 402. Evidence is considered relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence[.]" Miss. R. Evid. 401. Relevant evidence may be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Miss. R. Evid. 403. When a circuit court determines that potentially prejudicial evidence has sufficient probative value, it is within the court's sound discretion to admit the evidence. *Ronk*, 172, So. 3d at 1133-34.

¶29. Here, the circuit court carefully considered each piece of evidence recovered from

Abram's apartment and admitted only those firearm accessories or ammunition that were directly tied to Abram's planned attack. The court further elaborated on its evidentiary rulings during the hearing on Abram's motion for JNOV:

> As to the ammunition that was allowed, the Court did weigh the evidence, and I tried to be as cautious as I could in this trial as in every trial, but I feel like that was the right ruling and that only the ammunition that fit the guns that were located was allowed in. There was much more evidence that the State wished to bring in that I did not allow. So I think that was the correct weight. Additionally, it would have been proper given the overwhelming evidence of guilt. It cannot be said that the defendant suffered any prejudice as a result.

The record shows that on the second day of his suspension, Abram parked his Chevrolet Silverado, which contained multiple firearms and ammunition, at the Memphis Airport. He then rented a Kia Soul and loaded it with firearms, loaded magazines, two gallons of gasoline, a bulletproof vest, and his passport. The following day, Abram drove the rental car to Walmart and carried out his attack. The evidence recovered from Abram's truck and his apartment was relevant to establishing Abram's premeditated plan that began immediately after his suspension, and its probative value outweighed any potentially prejudicial effect. For these reasons, we find that the circuit court was well within its discretion in admitting into evidence the items recovered from Abram's apartment that were tied to either his Chevrolet Silverado or the Kia Soul.

¶30. Moreover, any error related to the admission of evidence recovered from these two locations would be harmless in light of the overwhelming evidence of guilt, even under this Court's heightened standard of review. *See, e.g.*, **Hughes v. State**, 735 So. 2d 238, 268

13

(Miss. 1999) (finding evidentiary error harmless based on "overwhelming evidence from other sources that Hughes committed the rape and murder"); *see also Mack v. State*, 650 So. 2d 1289, 1313 (Miss. 1994). Here, Abram admitted during his trial testimony that he brought firearms and gasoline to Walmart the morning of July 30, 2019, and shot both Brown and Gales. He also admitted setting the fire in the store. Surveillance footage captured both the murders and the arson. Abram further admitted shooting Officer Billingsley, and that admission was corroborated by eyewitness testimony by Officer Ware and Caston. Given this overwhelming and independent evidence of guilt, any alleged evidentiary error was harmless and does not warrant reversal.

### 2. The State presented sufficient evidence to support Abram's capital-murder convictions.

¶31. Abram challenges the sufficiency of the State's evidence to prove that he killed Brown and Gales while engaged in the commission of an arson. More specifically, he argues that the arson and murders are not part of one continuous transaction, reasoning that the deaths of Brown and Gales did not result from any acts connected to the arson. *See* Miss. Code Ann. § 97-3-19(2)(e) (Supp. 2019).

¶32. As for the sufficiency of the evidence presented, this Court must "determine whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Ambrose v. State*, 133 So. 3d 786, 791 (Miss. 2013) (quoting *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005), *abrogated on other grounds by Little v. State*, 233 So. 3d 288, 292 (Miss.

14

2017)). "[T]his Court will reverse only where the facts and inferences which were considered 'point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty.'" *Id.* (quoting *Hughes v. State*, 983 So. 2d 270, 275-76 (Miss. 2008)).

¶33.    Under the capital-murder statute, "[t]he killing of a human being without the authority of law by any means or in any manner shall be capital murder . . . [w]hen done with or without any design to effect death, by any person engaged in the commission of the crime of . . . arson . . . ." Miss. Code Ann. § 97-3-19(2)(e) (Supp. 2019).   For the underlying felony of arson, the State was required to prove beyond a reasonable doubt that Abram willfully and maliciously set fire to the Walmart.  Miss. Code Ann. § 97-17-5 (Rev. 2014).  Moreover, the element of felonious intent may be shown by the facts surrounding the crime.  *Gillett v. State*, 56 So. 3d 469, 492 (Miss. 2010) (citing *Walker v. State*, 913 So. 2d 198, 224 (Miss. 2005)).

¶34.    Mississippi follows the one-continuous-transaction doctrine to determine "whether the evidence establishes the requisite nexus between the killing and the underlying felony to constitute capital murder." *Batiste v. State*, 121 So. 3d 808, 831 (Miss. 2013) (citing *Gillett*, 56 So. 3d at 492); *see also Ronk*, 172 So. 3d at 1129.  This doctrine holds that, "where the two crimes [e.g., murder and arson] are connected in a chain of events and occur as part of the res gestae, the crime of capital murder is sustained." *Pickle v. State*, 345 So. 2d 623, 627 (Miss. 1977). "An indictment charging a killing occurring 'while engaged in the commission of' one of the enumerated felonies includes the actions of the defendant leading up to the

15

felony, the attempted felony, and flight from the scene of the felony." *Fulgham v. State*, 46 So. 3d 315, 329 (Miss. 2010) (internal quotation marks omitted) (quoting *Goff v. State*, 14 So. 3d 625, 649-50 (Miss. 2009)).

¶35.    Viewing the evidence and reasonable inferences in the light most favorable to the State, we find that Abram's argument is without merit. Abram admitted shooting Brown, shooting Gales, and starting the fire in Walmart. Additionally, security footage showed Abram shooting both victims, pouring liquid on the floor of Walmart, and setting a fire. He then threw one of the firearms used in the shooting into the fire before attempting to escape. For purposes of the one-continuous-transaction doctrine, the fact that neither victim was burned from the fire or died from fire is of no consequence. Notably, however, the only reason that Gales was not burned was because one of the officers moved his body to prevent it. The arson and murders are clearly connected in a continuous chain of events that began when Abram shot Brown in the Walmart parking lot and ended with his apprehension by law enforcement. For these reasons, we find that the one-continuous-transaction evidentiary doctrine sufficiently establishes all the elements of capital murder in this case.

### 3.    The capital-murder verdicts were not against the overwhelming weight of the evidence.

¶36.    Abram again relies on the one-continuous-transaction doctrine, this time to argue that the capital-murder verdicts were against the overwhelming weight of the evidence. The basis for his argument is nearly identical to that raised in issue two.

¶37.    For a challenge to the weight of the evidence, we view the evidence in the light most

favorable to the jury's verdict. *Little*, 233 So. 3d at 292. This Court will not disturb that verdict, unless we conclude that "it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* (internal quotation mark omitted) (quoting *Lindsey v. State*, 212 So. 3d 44, 45 (Miss. 2017)).

¶38.    As stated above, the arson and murders were undoubtedly part of one continuous transaction. The State presented a mountain of incontrovertible evidence, which was further supported by Abram's own testimony. Surveillance footage captured the entirety of Abram's premeditated actions. Eyewitnesses provided detailed accounts of the events of that day. The surviving victim himself testified, which was corroborated by eyewitness testimony. Abram admitted shooting Brown and Gales, setting the store on fire, placing his weapon in the fire, and shooting Officer Billingsley. When asked directly if he had ever denied being the person on the surveillance footage or committing the acts, Abram responded, "no." Accordingly, we find that the verdicts are not against the overwhelming weight of the evidence.

### 4.    We reject Abram's request to abandon the *M'Naghten* Rule.

¶39.    Abram urges this Court to abandon the *M'Naghten* Rule for determining sanity and to adopt Section 4.01 of the Model Penal Code of the American Law Institute. By way of background, Dr. Howard found that Abram did not meet the *M'Naghten* standard for insanity. Dr. Howard did find, however, that Abram met the standard for insanity under Section 4.01 of the Model Penal Code of the American Law Institute.

17

¶40.   At trial, Abram's attorney initially sought to call Dr. Howard during the guilt phase after Abram testified.  The attorney anticipated that Abram's recollection of the events surrounding the offense might appear incoherent, and Dr. Howard had opined in his report that such behavior was consistent with symptoms of Abram's psychosis or mental deficiency at the time of the crime.  The State objected, arguing that Abram was attempting to "maneuver around the *M'Naghten* standard."  Abram's attorney acknowledged that this type of testimony is "normally reserved . . . as a mitigating factor" and, after some back and forth, ultimately decided not to call Dr. Howard as a witness during the guilt phase.  He did indicate, however, that he would seek this Court's review of the *M'Naghten* standard if Abram were found guilty.

¶41.   "Under the *M'Naghten* test or rule, an accused is not criminally responsible if, at the time of committing the act, he was laboring under such a defect of reason from disease of the mind as not to know the nature and quality of the act he was doing, or if he did know it that he did not know he was doing what was wrong."  *Cox v. State*, 183 So. 3d 36, 61 n.2 (Miss. 2015) (internal quotation marks omitted) (citing *Nolan v. State*, 61 So. 3d 887, 895 (Miss. 2011)).  The Model Penal Code broadens the standard.  Section 4.01 provides that "[a] person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law." Model Penal Code § 4.01 (second alteration in the original) (West, Westlaw through 2023 annual

18

meeting of Am. L. Inst.).

¶42.    This Court most recently addressed this exact issue in *Ealey v. State*. 158 So. 3d 283, 295-96 (Miss. 2015).  In adherence to the doctrine of stare decisis, this Court declined Ealey's request to abandon the *M'Naghten* standard and replace it with Section 4.01.  *Id.* Similar arguments have been consistently rejected, and the *M'Naghten* Rule has been repeatedly reaffirmed. *Id.*  For example, in *Burk v. State*, 506 So. 2d 993, 993 (Miss. 1987), the defendant urged the Court to replace the *M'Naghten* Rule with Model Penal Code Section 4.01. The Court, however, noted that this proposition had been previously considered and reaffirmed that *M'Naghten* remains the controlling standard.  *Id.*; *see also* *Hill v. State*, 339 So. 2d 1382, 1385-86 (Miss.1976) (holding that *M'Naghten* is the "safest of the rules proposed" because it "better protects society's needs" than the Model Penal Code).  In light of this Court's longstanding precedent, we reject Abram's request to abandon the *M'Naghten* Rule in favor of Model Penal Code Section 4.01.

### 5.    Abram's death sentences are not disproportionate.

¶43.    Although not raised by the parties on appeal, this Court is required to review the proportionality of Abram's death sentences—both in relation to his convictions and to Abram individually—pursuant to Mississippi Code Section 99-19-105(3)(c) (Rev. 2015). This Court has upheld sentences of death for capital murders with the underlying felony of arson.  *See Ronk*, 172 So. 3d 1112; *Howard v. State*, 853 So. 2d 781 (Miss. 2003); and *Carr v. State*, 655 So. 2d 824 (Miss. 1995).

19

¶44. The State presented the following aggravating circumstances for Brown's murder: (1) Abram knowingly created a great risk of death to many people; (2) the capital offense was committed during the attempt or commission of an arson; and (3) the capital offense was committed to avoid or prevent a lawful arrest or to effect an escape from custody. The jury found all three aggravating circumstances beyond a reasonable doubt.

¶45. The State presented the following aggravating circumstances for Gales's murder: (1) Abram knowingly created a great risk of death to many people; (2) the capital offense was committed during the attempt or commission of an arson; (3) the capital offense was committed to avoid or prevent a lawful arrest or to effect an escape from custody; and (4) the capital offense was committed to disrupt or hinder the lawful exercise of a governmental function or enforcement of laws. The jury found all four aggravating circumstances beyond a reasonable doubt.

¶46. Because this Court has upheld the death penalty in similar instances and because the jury found numerous aggravating circumstances for each capital-murder conviction, we find that no disproportionality exists in this case.

## CONCLUSION

¶47. In summary, the circuit court did not err by allowing into evidence items recovered from Abram's Chevrolet Silverado and his apartment. Further, the State presented sufficient evidence to support Abram's capital-murder convictions, and the verdicts were not against the overwhelming weight of the evidence. We reject Abram's request to abandon the

20

*M'Naghten* Rule as Mississippi's legal standard for insanity. And finally, we find that Abram's death sentences are not disproportionate. We therefore affirm Abram's convictions and sentences.

¶48.    **AFFIRMED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., MAXWELL, CHAMBERLIN, GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR.**

# APPENDIX

## DEATH CASES AFFIRMED BY THIS COURT

*Willie Cory Godbolt v. State*, 407 So. 3d 86 (Miss. 2024)

*Tony Terrell Clark v. State*, 343 So. 3d 943 (Miss. 2022).

*Alberto Julio Garcia v. State*, 300 So. 3d 945 (Miss. 2020).

*Abdur Rahim Ambrose v. State*, 254 So. 3d 77 (Miss. 2018).

*Curtis Giovanni Flowers v. State*, 240 So. 3d 1082 (Miss. 2017), *rev'd and remanded*, 139 S. Ct. 2228, 204 L. Ed. 2d 638 (2019).

*Timothy Nelson Evans v. State*, 226 So. 3d 1 (Miss. 2017).

*James Cobb Hutto III v. State*, 227 So. 3d 963 (Miss. 2017).

*David Cox v. State*, 183 So. 3d 36 (Miss. 2015).

*David Dickerson v. State*, 175 So. 3d 8 (Miss. 2015).

*Timothy Robert Ronk v. State*, 172 So. 3d 1112 (Miss. 2015).

*Curtis Giovanni Flowers v. State*, 158 So. 3d 1009 (Miss. 2014), *vacated*, 136 S. Ct. 2157, 195 L. Ed. 2d 817 (2016).

*Caleb Corrothers v. State*, 148 So. 3d 278 (Miss. 2014), *leave to seek PCR granted in part and denied in part*, 255 So. 3d 99 (Miss. 2017).

*Jason Lee Keller v. State*, 138 So. 3d 817 (Miss. 2014), *leave to seek PCR granted in part and denied in part*, 229 So. 3d 715 (Miss. 2017).

*Leslie Galloway III v. State*, 122 So. 3d 614 (Miss. 2013).

*Bobby Batiste v. State*, 121 So. 3d 808 (Miss. 2013), *leave to seek PCR granted*, 184 So. 3d 290 (Miss. 2016).

*Roger Lee Gillett v. State,* 56 So. 3d 469 (Miss. 2010).

*Moffett v. State*, 49 So. 3d 1073 (Miss. 2010).

*Pitchford v. State*, 45 So. 3d 216 (Miss. 2010).

*Goff v. State*, 14 So. 3d 625 (Miss. 2009).

*Wilson v. State*, 21 So. 3d 572 (Miss. 2009).

*Chamberlin v. State*, 989 So. 2d 320 (Miss. 2008).

*Loden v. State*, 971 So. 2d 548 (Miss. 2007).

*King v. State*, 960 So. 2d 413 (Miss. 2007).

*Bennett v. State*, 933 So. 2d 930 (Miss. 2006).

*Havard v. State*, 928 So. 2d 771 (Miss. 2006).

*Spicer v. State*, 921 So. 2d 292 (Miss. 2006).

*Hodges v. State*, 912 So. 2d 730 (Miss. 2005).

*Walker v. State*, 913 So. 2d 198 (Miss. 2005).

*Le v. State*, 913 So. 2d 913 (Miss. 2005), *leave to seek PCR denied*, 967 So. 2d 627 (Miss. 2007), *leave to seek second PCR granted*, 2013-DR-00327-SCT (Miss. Jan. 26, 2016).

*Brown v. State*, 890 So. 2d 901 (Miss. 2004).

*Powers v. State*, 883 So. 2d 20 (Miss. 2004)

*Branch v. State*, 882 So. 2d 36 (Miss. 2004).

*Scott v. State*, 878 So. 2d 933 (Miss. 2004).

*Lynch v. State*, 877 So. 2d 1254 (Miss. 2004).

*Dycus v. State*, 875 So. 2d 140 (Miss. 2004).

*Byrom v. State*, 863 So. 2d 836 (Miss. 2003).

*Howell v. State*, 860 So. 2d 704 (Miss. 2003).

*Howard v. State*, 853 So. 2d 781 (Miss. 2003).

*Walker v. State*, 815 So. 2d 1209 (Miss. 2002). *following remand.

*Bishop v. State*, 812 So. 2d 934 (Miss. 2002).

*Stevens v. State*, 806 So. 2d 1031 (Miss. 2002).

*Grayson v. State*, 806 So. 2d 241 (Miss. 2002).

*Knox v. State*, 805 So. 2d 527 (Miss. 2002).

*Simmons v. State*, 805 So. 2d 452 (Miss. 2002).

*Berry v. State*, 802 So. 2d 1033 (Miss. 2001).

*Snow v. State*, 800 So. 2d 472 (Miss. 2001).

*Mitchell v. State*, 792 So. 2d 192 (Miss. 2001).

*Puckett v. State*, 788 So. 2d 752 (Miss. 2001). * following remand.

*Goodin v. State*, 787 So. 2d 639 (Miss. 2001).

*Jordan v. State*, 786 So. 2d 987 (Miss. 2001).

*Manning v. State*, 765 So. 2d 516 (Miss. 2000). *following remand.

*Eskridge v. State*, 765 So. 2d 508 (Miss. 2000).

*McGilberry v. State*, 741 So. 2d 894 (Miss. 1999).

*Puckett v. State*, 737 So. 2d 322 (Miss. 1999). *remanded for *Batson* hearing.

*Manning v. State*, 735 So. 2d 323 (Miss. 1999). *remanded for *Batson* hearing.

*Hughes v. State*, 735 So. 2d 238 (Miss. 1999).

*Turner v. State*, 732 So. 2d 937 (Miss. 1999).

*Smith v. State*, 729 So. 2d 1191 (Miss. 1998).

*Burns v. State*, 729 So. 2d 203 (Miss. 1998).

*Jordan v. State*, 728 So. 2d 1088 (Miss. 1998).

*Gray v. State*, 728 So. 2d 36 (Miss. 1998).

*Manning v. State*, 726 So. 2d 1152 (Miss. 1998).

*Woodward v. State*, 726 So. 2d 524 (Miss. 1997).

*Bell v. State*, 725 So. 2d 836 (Miss. 1998), *post-conviction relief granted in part and denied in part*, 725 So. 2d 836 (Miss. 2011).

*Evans v. State*, 725 So. 2d 613 (Miss. 1997).

*Brewer v. State*, 725 So. 2d 106 (Miss. 1998).

*Crawford v. State*, 716 So. 2d 1028 (Miss. 1998).

*Doss v. State*, 709 So. 2d 369 (Miss. 1996).

*Underwood v. State*, 708 So. 2d 18 (Miss. 1998).

*Holland v. State*, 705 So. 2d 307 (Miss. 1997).

*Wells v. State*, 698 So. 2d 497 (Miss. 1997).

*Wilcher v. State*, 697 So. 2d 1087 (Miss. 1997).

*Wiley v. State*, 691 So. 2d 959 (Miss. 1997).

*Brown v. State*, 690 So. 2d 276 (Miss. 1996).

*Simon v. State*, 688 So. 2d 791 (Miss.1997).

*Jackson v. State*, 684 So. 2d 1213 (Miss. 1996).

*Williams v. State*, 684 So. 2d 1179 (Miss. 1996).

*Davis v. State*, 684 So. 2d 643 (Miss. 1996).

*Taylor v. State*, 682 So. 2d. 359 (Miss. 1996).

*Brown v. State*, 682 So. 2d 340 (Miss. 1996).

*Blue v. State*, 674 So. 2d 1184 (Miss. 1996).

*Holly v. State*, 671 So. 2d 32 (Miss. 1996).

*Walker v. State*, 671 So. 2d 581 (Miss. 1995).

*Russell v. State*, 670 So. 2d 816 (Miss. 1995).

*Ballenger v. State*, 667 So. 2d 1242 (Miss. 1995).

*Davis v. State*, 660 So. 2d 1228 (Miss. 1995).

*Carr v. State*, 655 So. 2d 824 (Miss. 1995).

*Mack v. State*, 650 So. 2d 1289 (Miss. 1994).

*Chase v. State*, 645 So. 2d 829 (Miss. 1994).

*Foster v. State*, 639 So. 2d 1263 (Miss. 1994).

*Conner v. State*, 632 So. 2d 1239 (Miss. 1993).

*Hansen v. State*, 592 So. 2d 114 (Miss. 1991).

***Shell v. State**, 554 So. 2d 887 (Miss. 1989); **Shell v. Mississippi**, 498 U.S. 1 (1990) (reversing, in part, and remanding); **Shell v. State**, 595 So. 2d 1323 (Miss. 1992) (remanding for new sentencing hearing).

*Davis v. State*, 551 So. 2d  165 (Miss. 1989).

*Minnick v. State*, 551 So. 2d 77 (Miss. 1989).

*****Pinkney v. State*****, 538 So. 2d 329 (Miss. 1989); *****Pinkney v. Mississippi*****, 494 U.S. 1075 (1990) (vacating and remanding); *****Pinkney v. State*****, 602 So. 2d 1177 (Miss. 1992) (remanding for new sentencing hearing).

*****Clemons v. State*****, 535 So. 2d 1354 (Miss. 1988); *****Clemons v. Mississippi*****, 494 U.S. 738 (1990) (vacating and remanding); *****Clemons v. State*****, 593 So. 2d 1004 (Miss. 1992) (remanding for new sentencing hearing).

*Woodward v. State*, 533 So. 2d 418 (Miss. 1988).

*Nixon v. State*, 533 So. 2d 1078 (Miss. 1987).

*Cole v. State*, 525 So. 2d 365 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1346 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1317 (Miss. 1987).

*Faraga v. State*, 514 So. 2d 295 (Miss. 1987).

*****Jones v. State*****, 517 So. 2d 1295 (Miss. 1987); *****Jones v. Mississippi*****, 487 U.S. 1230 (1988) (vacating and remanding); *****Jones v. State*****, 602 So. 2d 1170 (Miss. 1992) (remanding for new sentencing hearing).

*Wiley v. State*, 484 So. 2d 339 (Miss. 1986).

*Johnson v. State*, 477 So. 2d 196 (Miss. 1985).

*Gray v. State*, 472 So. 2d 409 (Miss. 1985).

*Cabello v. State*, 471 So. 2d 332 (Miss. 1985).

*Jordan v. State*, 464 So. 2d 475 (Miss. 1985).

*Wilcher v. State*, 455 So. 2d 727 (Miss. 1984).

*Billiot v. State*, 454 So. 2d 445 (Miss. 1984).

*Stringer v. State*, 454 So.  2d 468 (Miss. 1984).

*Dufour v. State*, 453 So. 2d 337 (Miss. 1984).

*Neal v. State*, 451 So. 2d 743 (Miss. 1984).

*Booker v. State*, 449 So. 2d 209 (Miss. 1984).

*Wilcher v. State*, 448 So. 2d 927 (Miss. 1984).

*Caldwell v. State*, 443 So. 2d 806 (Miss. 1983).

*Irving v. State*, 441 So. 2d 846 (Miss. 1983).

*Tokman v. State*, 435 So. 2d 664 (Miss. 1983).

*Leatherwood v. State*, 435 So. 2d 645 (Miss. 1983).

*Hill v. State*, 432 So. 2d 427 (Miss. 1983).

*Pruett v. State*, 431 So. 2d 1101 (Miss. 1983).

*Gilliard v. State*, 428 So. 2d 576 (Miss. 1983).

*Evans v. State*, 422 So. 2d 737 (Miss. 1982).

*King v. State*, 421 So. 2d 1009 (Miss. 1982).

*Wheat v. State*, 420 So. 2d 229 (Miss. 1982).

*Smith v. State*, 419 So. 2d 563 (Miss. 1982).

*Johnson v. State*, 416 So. 2d 383 (Miss.1982).

*Edwards v. State*, 413 So. 2d 1007 (Miss. 1982).

*Bullock v. State*, 391 So. 2d 601 (Miss. 1980).

*Reddix v. State*, 381 So. 2d 999 (Miss. 1980).

*Jones v. State*, 381 So. 2d 983 (Miss. 1980).

*Culberson v. State*, 379 So. 2d 499 (Miss. 1979).

*Gray v. State*, 375 So. 2d 994 (Miss. 1979).

*Jordan v. State*, 365 So. 2d 1198 (Miss. 1978).

*Voyles v. State*, 362 So. 2d 1236 (Miss. 1978).

*Irving v. State*, 361 So. 2d 1360 (Miss. 1978).

*Washington v. State*, 361 So. 2d 6l (Miss. 1978).

*Bell v. State*, 360 So. 2d 1206 (Miss. 1978).

*Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

## DEATH CASES REVERSED AS TO GUILT PHASE
## AND SENTENCING PHASE

*Curtis Giovanni Flowers v. State*, 287 So. 3d 905 (Miss. 2019), *on remand from* 139 S. Ct. 2228, 204 L. Ed. 2d 638 (2019).

*Justin Barrett Blakeney v. State*, 236 So. 3d 11 (Miss. 2017).

*Sherwood Brown v. State*, 2017-DR-00206-SCT (Miss. Oct. 26, 2017) (order granting post-conviction relief and vacating underlying convictions and sentences and remanding to the DeSoto County Circuit Court for a new trial).

*Erik Wayne Hollie v. State*, 174 So. 3d 824 (Miss. 2015).

*Manning v. State*, 158 So. 3d 302 (Miss. 2015) (reversing denial of post-conviction relief).

*Byrom v. State*, 2014-DR-00230-SCT (Miss. April 3, 2014) (order).

*Ross v. State*, 954 So. 2d 968 (Miss. 2007).

*Flowers v. State*, 947 So. 2d 910 (Miss. 2006).

*Flowers v. State*, 842 So. 2d 531 (Miss. 2003).

*Randall v. State*, 806 So. 2d 185 (Miss. 2002).

*Flowers v. State*, 773 So. 2d 309 (Miss. 2000).

*Edwards v. State*, 737 So. 2d 275 (Miss. 1999).

*Smith v. State*, 733 So. 2d 793 (Miss. 1999).

*Porter v. State*, 732 So. 2d 899 (Miss. 1999).

*Kolberg v. State*, 704 So. 2d 1307 (Miss. 1997).

*Snelson v. State*, 704 So. 2d 452 (Miss. 1997).

*Fusilier v. State*, 702 So. 2d 388 (Miss. 1997).

*Howard v. State*, 701 So. 2d 274 (Miss. 1997).

*Lester v. State*, 692 So. 2d 755 (Miss. 1997).

*Hunter v. State*, 684 So. 2d 625 (Miss. 1996).

*Lanier v. State*, 684 So. 2d 93 (Miss. 1996).

*Giles v. State*, 650 So. 2d 846 (Miss. 1995).

*Duplantis v. State*, 644 So. 2d 1235 (Miss. 1994).

*Harrison v. State*, 635 So. 2d 894 (Miss. 1994).

*Butler v. State*, 608 So. 2d 314 (Miss. 1992).

*Jenkins v. State*, 607 So. 2d 1171 (Miss. 1992).

*Abram v. State*, 606 So. 2d 1015 (Miss. 1992).

*Balfour v. State*, 598 So. 2d 731 (Miss. 1992).

*Griffin v. State*, 557 So. 2d 542 (Miss. 1990).

*Bevill v. State*, 556 So. 2d 699 (Miss. 1990).

*West v. State*, 553 So. 2d 8 (Miss. 1989).

*Leatherwood v. State*, 548 So. 2d 389 (Miss. 1989).

*Mease v. State*, 539 So. 2d 1324 (Miss. 1989).

*Houston v. State*, 531 So. 2d 598 (Miss. 1988).

*West v. State*, 519 So. 2d 418 (Miss. 1988).

*Davis v. State*, 512 So. 2d 129l (Miss. 1987).

*Williamson v. State*, 512 So. 2d 868 (Miss. 1987).

*Foster v. State*, 508 So. 2d 1111 (Miss. 1987).

*Smith v. State*, 499 So. 2d 750 (Miss. 1986).

*West v. State*, 485 So. 2d 681 (Miss. 1985).

*Fisher v. State*, 481 So. 2d 203 (Miss. 1985).

*Johnson v. State*, 476 So. 2d 1195 (Miss. 1985).

*Fuselier v. State*, 468 So. 2d 45 (Miss. 1985).

*West v. State*, 463 So. 2d 1048 (Miss. 1985).

*Jones v. State*, 461 So. 2d 686 (Miss. 1984).

*Moffett v. State*, 456 So. 2d 714 (Miss. 1984).

*Lanier v. State*, 450 So. 2d 69 (Miss. 1984).

*Laney v. State*, 421 So. 2d 1216 (Miss. 1982).

**DEATH CASES REVERSED**
**AS TO PUNISHMENT AND REMANDED**
**FOR RESENTENCING TO LIFE IMPRISONMENT**

*Bell v. State*, 160 So. 3d 188 (Miss. 2016).

*Reddix v. State*, 547 So. 2d 792 (Miss. 1989).

*Wheeler v. State*, 536 So. 2d 1341 (Miss. 1988).

*White v. State*, 532 So. 2d 1207 (Miss. 1988).

*Bullock v. State*, 525 So. 2d 764 (Miss. 1987).

*Edwards v. State*, 441 So. 2d 84 (Miss. l983).

*Dycus v. State*, 440 So. 2d 246 (Miss. 1983).

*Coleman v. State*, 378 So. 2d 640 (Miss. 1979).

## DEATH CASES REVERSED AS TO
## PUNISHMENT AND REMANDED FOR A NEW TRIAL
## ON SENTENCING PHASE ONLY

*Fulgham v. State*, 46 So. 3d 315 (Miss. 2010).

*Rubenstein v. State*, 941 So. 2d 735 (Miss. 2006).

*King v. State*,  784 So. 2d 884 (Miss. 2001).

*Walker v. State*, 740 So. 2d 873 (Miss. 1999).

*Watts v. State*, 733 So. 2d 214 (Miss. 1999).

*West v. State*, 725 So. 2d 872 (Miss. 1998).

*Smith v. State*, 724 So. 2d 280 (Miss. 1998).

*Berry v. State*, 703 So. 2d 269 (Miss. 1997).

*Booker v. State*, 699 So. 2d 132 (Miss. 1997).

*Taylor v. State*, 672 So. 2d 1246 (Miss. 1996).

*\*Shell v. State*, 554 So. 2d 887 (Miss. 1989); *Shell v. Mississippi*, 498 U.S. 1 (1990) (reversing, in part, and remanding); *Shell v. State* 595 So. 2d 1323 (Miss. 1992) (remanding for new sentencing hearing).

*\*Pinkney v. State*, 538 So. 2d 329 (Miss. 1989); *Pinkney v. Mississippi,* 494 U.S. 1075 (1990) (vacating and remanding); *Pinkney v. State,* 602 So. 2d 1177 (Miss. 1992) (remanding for new sentencing hearing).

*\*Clemons v. State*, 535 So. 2d 1354 (Miss. 1988); *Clemons v. Mississippi*, 494 U.S. 738 (1990) (vacating and remanding); *Clemons v. State*, 593 So. 2d 1004 (Miss. 1992) (remanding for new sentencing hearing).

*\*Jones v. State*, 517 So. 2d 1295 (Miss. 1987); *Jones v. Mississippi,* 487 U.S. 1230 (1988) (vacating and remanding); *Jones v. State*, 602 So. 2d 1170 (Miss. 1992) (remanding for new sentencing hearing).

*Russell v. State*, 607 So. 2d 1107 (Miss. 1992).

*Holland v. State*, 587 So. 2d 848 (Miss. 1991).
*Willie v. State*, 585 So. 2d 660 (Miss. 1991).

*Ladner v. State*, 584 So. 2d 743 (Miss. 1991).

*Mackbee v. State*, 575 So. 2d 16 (Miss. 1990).

*Berry v. State*, 575 So. 2d 1 (Miss. 1990).

*Turner v. State*, 573 So. 2d 657 (Miss. 1990).

*State v. Tokman*, 564 So. 2d 1339 (Miss. 1990).

*Johnson v. State*, 547 So. 2d 59 (Miss. 1989).

*Williams v. State*, 544 So. 2d 782 (Miss. 1989), *sentence aff'd*, 684 So. 2d 1179 (1996).

*Lanier v. State*, 533 So. 2d 473 (Miss. 1988).

*Stringer v. State*, 500 So. 2d 928 (Miss. 1986).

*Pinkton v. State*, 481 So. 2d 306 (Miss. 1985).

*Mhoon v. State*, 464 So. 2d 77 (Miss. 1985).

*Cannaday v. State*, 455 So. 2d 713 (Miss. 1984).

*Wiley v. State*, 449 So. 2d 756 (Miss. 1984), *aff'd*, **Wiley v. State**, 484 So. 2d 339 (Miss. 1986), *cert. denied*, 479 U.S. 1036 (1988), *resentencing ordered*, 635 So. 2d 802 (Miss. 1993), *following writ of habeas corpus issued sub nom. **Wiley v. Puckett***, 969 So. 2d 86, 105-106 (5th Cir. 1992), *resentencing affirmed*, 691 So. 2d 959 (Miss. 1997).

*Williams v. State*, 445 So. 2d 798 (Miss. 1984) (case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing).